**Reversed and Remanded and Opinion filed May 21, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00742-CV

**THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellant**

**V.**

**WADDELL GORDON LONG, Appellee**

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 11-DCV-191102**

## O P I N I O N [1]

This is a child support case involving two states: Texas, which is home to the father, and North Carolina, where his children currently reside. The trial court dismissed a petition to establish an order for support and concluded that continuing, exclusive jurisdiction was vested in a North Carolina tribunal. The issue on appeal is whether a trial court in Texas may adjudicate the child support obligation. Because we conclude that the North Carolina tribunal had not acquired

---

[1] The parties have also styled this case as *In the Interest of C.O.L. and C.J.L., Children*.

continuing, exclusive jurisdiction, we reverse the trial court's order dismissing the cause and remand for additional proceedings.

In 2006, a North Carolina court entered a judgment of absolute divorce dissolving the marriage of Waddell Long and his wife Adrienne. The scope of the judgment is not as comprehensive as a traditional divorce decree in Texas; it does not purport to divide any portion of the marital estate. The judgment also is silent on matters of conservatorship and support despite there being two children born of the marriage. Instead of adjudicating such rights and incidents to divorce, the North Carolina court issued findings stating that "there are no claims for child support, alimony or equitable distribution of marital property between the parties."

Waddell relocated to Texas after the divorce, where he has since remarried and established a new domicile. Adrienne and the children continue to reside in North Carolina. The Texas Attorney General filed a petition against Waddell in 2011 at the request of North Carolina's federally mandated Title IV-D agency to establish a support obligation for the benefit of his children. Waddell answered with a plea to the jurisdiction and contended that the North Carolina court was the only tribunal that could adjudicate his child support obligation. The trial court agreed with Waddell and dismissed the petition without prejudice.

We must determine whether a Texas court has jurisdiction to adjudicate Waddell's child support obligation. Because jurisdiction is a question of law, our review is de novo. *See In re G.S.G.*, 145 S.W.3d 351, 353 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The trial court's jurisdiction is governed by the Uniform Interstate Family Support Act ("UIFSA"), which all fifty states have adopted. UIFSA contains certain procedural rules for establishing, modifying, and enforcing child support obligations. These rules are designed to maintain a "one-order-at-a-time world,"

2

ensuring that only a single controlling support order exists and is enforced consistently among the states. *See* Commissioners' Official Comment to UIFSA Section 207, *reprinted in* Sampson & Tindall's Texas Family Code Annotated § 159.207 (2011 ed.) (contrasting the "multiple-order system" of an earlier statutory scheme).

UIFSA achieves its one-order-at-a-time system through the recognition of "continuing, exclusive jurisdiction." *See, e.g.*, Tex. Fam. Code §§ 155.001, 159.205–.206. Once a court having jurisdiction enters a support decree, that court becomes the only tribunal authorized to modify the decree for as long as it retains jurisdiction. *See id.* § 159.205. A court retains its jurisdiction under UIFSA if at least one person affected by the decree still resides in the issuing state. *See id.* Once issued, a decree becomes entitled to full faith and credit in all fifty states. This generally means that courts in other states must enforce the decree as written unless the issuing state somehow loses its continuing, exclusive jurisdiction. *See id.* § 159.611 (defining the circumstances in which a court may modify a support order from another state).

If no support order has been issued, UIFSA provides that a court may establish an order for child support on behalf of an individual or support enforcement agency located in another state. *See id.* § 159.401. The Attorney General argues that the trial court's jurisdiction was plenary under this provision because the foreign divorce decree does not expressly establish a child support obligation. Waddell disputes this understanding of the divorce decree. He emphasizes the finding that no claims for child support were presented during the divorce proceedings. Waddell contends that when the North Carolina tribunal addressed this absence of claims, it effectively exercised its jurisdiction over "the subject of child support."

3

We analyze this dispute under North Carolina law, which properly determines the scope of the judgment of absolute divorce. The primary effect of a judgment of absolute divorce is to dissolve the bonds of matrimony; it changes the status of those involved from married to not married. *See* N.C. Gen. Stat. § 50-11 (stating the effects of absolute divorce). A judgment may contain additional provisions—for instance, those respecting the care and custody of children—but only "upon proper pleadings and proper and due notice to all interested parties." *Id.* § 50-11.2; *see also id.* §§ 50-20, 50-21 (providing similar permissive language with respect to the distribution of marital property).

If claims for custody or support are not pursued in the original divorce proceeding, they may be maintained as independent civil actions. *See id.* § 50-13.5(b)(1); *e.g.*, *Flitt v. Flitt*, 561 S.E.2d 511, 512–13 (N.C. Ct. App. 2002) (noting that matters concerning child custody and support were pending in another action separate from the divorce proceeding). These separate actions may proceed before or after the divorce is final and regardless of whether a petition for divorce has even been filed. *See* N.C. Gen. Stat. §§ 50-13.1, 50-13.4; *e.g.*, *Baumann-Chacon v. Baumann*, 710 S.E.2d 431, 435–36 (N.C. Ct. App. 2011) (holding that trial court had jurisdiction to consider custody dispute before a divorce or separation action had commenced). However, in the interest of judicial economy, a court may join such actions on its own motion to an action for divorce. *See* N.C. Gen. Stat. 13.5(b)(6).

Because North Carolina law permits separate actions for custody and support, parties can limit their requested relief solely to dissolution of marriage. *See id.* § 50-8 (stating that a complaint must set forth, at a minimum, only the grounds for divorce and the names of any dependent children born of the marriage). When the more contentious aspects of the divorce are reserved for later

determination, trial courts can then grant a divorce by way of summary judgment. *See, e.g.*, *Daniel v. Daniel*, 510 S.E.2d 689, 690 (N.C. Ct. App. 1999) (affirming summary judgment on claim for absolute divorce where wife failed to raise a genuine issue of material fact rebutting husband's sworn assertion that the couple had lived continuously separate and apart for one year). We see the summary judgment practice used occasionally in Texas divorces. *See, e.g.*, *Taylor v. Taylor*, No. 10-03-002-CV, 2003 WL 23120178, at \*3–4 (Tex. App.—Waco Dec. 31, 2003, pet. denied) (mem. op.) (affirming summary judgment on claim for divorce where evidence was undisputed that husband had been convicted of a felony, had been imprisoned for at least one year, and had not been pardoned). We also see it in the case presently before us; summary judgment was granted because Waddell and Adrienne lived continuously separate and apart for one year. *See* N.C. Gen. Stat. § 50-6.

Relying on the permissive nature of divorce laws in North Carolina, the Attorney General argues that no order for child support was included in the judgment of absolute divorce. Specifically, the Attorney General contends that if the parties to a divorce are not required to petition for child support, and if the findings indicate that no demand for child support has been made, then no order for child support could have been established. In such cases, the Attorney General explains that the foreign tribunal is "likely" precluded from adjudicating the child support obligation. *See id.* § 50-11.2 (providing that a court may include an order for child support in a judgment of absolute divorce "upon proper pleadings").

The Attorney General's position has been adopted by at least one other state court. In *Mason v. Cuisenaire*, 128 P.3d 446 (Nev. 2006), the Nevada Supreme Court was confronted with a similar judgment of absolute divorce entered by a North Carolina tribunal. The judgment in that case awarded custody of the child to

the mother, but it did not further establish an order for support against the father. Instead, the North Carolina tribunal found that "there are no pending claims for post-separation support, alimony, or equitable distribution." *Id.* at 447.

The father moved to Nevada after the divorce; the mother and child moved to Belgium. The mother subsequently filed a complaint in a Nevada state court seeking current and retroactive child support from the date of the divorce decree. The trial court granted both and the father appealed only as to the arrearage. After examining North Carolina law, the Nevada Supreme Court concluded that the judgment of absolute divorce was "silent regarding child support." The court accordingly affirmed the arrearage after determining that jurisdictional issues did not preclude the trial court from establishing an award of child support when no foreign support order existed. *See id.* at 451–52 (citing *Willers v. Willers*, 587 N.W.2d 390 (Neb. 1998)).

Waddell cites the following cases to suggest that *Mason* should not apply: *Ex parte Mullins*, 414 S.W.2d 455 (Tex. 1967); *Giangrosso v. Crosley*, 840 S.W.2d 765 (Tex. App.—Houston [1st Dist.] 1992, no writ); and *Tipton v. Lester*, 178 S.W.2d 580 (Tex. Civ. App.—San Antonio 1944, no writ). According to Waddell, these cases hold that "actions seeking child support where no child support was issued in the original divorce decree are considered modification actions." Waddell then suggests that the Attorney General is precluded from modifying the judgment of absolute divorce because the North Carolina tribunal retains continuing, exclusive jurisdiction. *See* Tex. Fam. Code § 159.611 (providing that a court of this state may not modify a support order entered by another state if an affected individual still resides in the issuing state). All of the

6

cited cases are distinguishable. Each was decided before the enactment of UIFSA, and none addresses jurisdictional disputes between Texas and another state.[2]

Persuaded by *Mason*, we conclude that the judgment of absolute divorce makes no provision for child support. *See Mason*, 128 P.3d at 451–52. Without an existing order, the Attorney General's petition is properly classified as a petition to establish an order of support rather than a petition to modify an order of no support. Under UIFSA, the trial court had the authority to adjudicate Waddell's child support obligation. *See* Tex. Fam. Code § 159.401. Because the North Carolina tribunal had not acquired continuing, exclusive jurisdiction, we reverse the trial court's order granting the plea to the jurisdiction and remand for additional proceedings consistent with this opinion.


/s/    William J. Boyce
       Justice


Panel consists of Justices Frost, Boyce, and Donovan.

---

[2] Waddell also cites *Medrick v. Rutherford*, No. 05-00-01102-CV, 2001 WL 840609 (Tex. App.—Dallas July 26, 2001, no pet.) (not designated for publication). As an unpublished opinion issued before January 1, 2003, *Medrick* has no precedential value. *See* Tex. R. App. P. 47.7(b).