

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00006-CV

IN THE INTEREST OF T.B. AND
A.B., CHILDREN

------------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 233-558243-14

----------

## OPINION

----------

### I. INTRODUCTION

The primary issue we address in this appeal is whether a Florida court's inaction after making an initial child custody determination constituted an implicit determination that the 233rd District Court in Tarrant County, Texas, (hereinafter the trial court) was a more convenient forum for Appellee Mother's suit affecting the parent-child relationship (SAPCR) seeking modification of the initial child-

custody order issued by the Florida court. Because we hold that the Florida court's inaction—in failing for six months to either respond to communications from the trial court or to rule on custody matters that Father had filed with the Florida court after Mother had filed her SAPCR in the trial court—constituted such an implicit determination, we will affirm the trial court's denial of Father's plea to the jurisdiction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Mother and Appellant Father are the parents of two children, T.B. and A.B. Mother and Father lived together in Florida with the children until early May 2012 when Mother moved to Texas with the children.[1] Father then instituted a paternity suit in Florida, and ultimately, the 19th Judicial Circuit Court of St. Lucie County, Florida, (the Florida court) signed a May 28, 2013 order approving a settlement agreement entered into by the parties.[2] The agreement declared Father's paternity of both children, provided a parenting plan, set a visitation schedule, and provided that the children would live in Texas with Mother; the agreement did not require Father to pay child support.

On August 1, 2014, after registering the Florida order with the Tarrant County District Clerk's office, Mother filed a SAPCR in the trial court seeking

[1]Mother and Father never married.

[2]The Florida court's order simply states that the cause came before the court on the stipulation of the parties and that the court "ORDERED AND ADJUDGED that the Settlement Agreement entered by the parties on the 14 day of May, 2013, is hereby approved."

modification of the Florida order. Father filed a motion to dismiss Mother's SAPCR, alleging that the Florida court was the court exercising continuing jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA or the Act) and that the trial court lacked subject-matter jurisdiction. At the hearing on Father's motion to dismiss for lack of jurisdiction, the trial court advised counsel that before proceeding, it would contact the Florida court to discuss the jurisdictional issue and the Florida court's retention of continuing, exclusive jurisdiction.

On February 5, 2015, Mother filed with the trial court a written request for a UCCJEA conference between the trial court and the Florida court. On February 12, 2015, Father, who still lived in Florida, filed a motion to reopen the case in Florida and requested that the Florida court confirm its jurisdiction and enforce its order. The trial court repeatedly attempted to communicate with the Florida court, but the Florida court did not respond.

Finally, on June 15, 2015, after four months had elapsed and the Florida court had neither ruled on Father's motion requesting confirmation of jurisdiction in Florida nor responded in any way to the trial court's communications, the trial court set Mother's SAPCR for final hearing on August 24, 2015. Both Father and Mother appeared at the final hearing and offered evidence; the trial court ultimately signed an October 13, 2015 final judgment modifying the Florida court's order. Father perfected this appeal and raises three issues challenging the trial court's jurisdiction.

3

### III. STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004). Whether undisputed evidence of jurisdictional facts established a trial court's jurisdiction is also a question of law. *Id.* at 226; *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 857 (Tex. App.—Fort Worth 2010, pet. denied).

### IV. JURISDICTION UNDER THE UCCJEA

In his first issue, Father asserts that the trial court lacked subject-matter jurisdiction to modify the Florida court's order concerning conservatorship and visitation issues because the Florida court had continuing, exclusive jurisdiction under the UCCJEA and has not relinquished its jurisdiction to the trial court or determined Texas to be a more convenient forum and because Father still resides in Florida.

### A. The Law Concerning UCCJEA Modification Jurisdiction

### 1. Section 152.203 governs

The UCCJEA encourages national uniformity in child-custody disputes; the Act is an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child-custody orders, forum shopping, and the drawn out and complex child-custody legal proceedings often encountered by parties where multiple states are involved. *See In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012) (orig. proceeding). The UCCJEA limits the jurisdiction of one state to modify the

4

child-custody orders of another state. *Id.* Most states, including Texas[3] and Florida,[4] have adopted the UCCJEA in order to reduce conflicting orders regarding custody and placement of children. *See id.*

The UCCJEA provides that a Texas court possesses jurisdiction to *modify* orders from another state that affect the parent-child relationship if the following requirements are met:

• Texas would have jurisdiction to make an initial determination under either UCCJEA section 152.201(a)(1) ("home-state jurisdiction") *or* (a)(2)("significant connections jurisdiction"), and

• the court of the other state determines it no longer has exclusive continuing jurisdiction under section 152.202 or that a court of this state would be a more convenient forum under section 152.207.

*See* Tex. Fam. Code Ann. § 152.203 (West 2014). Under this two-pronged analysis, we first examine whether Texas would have jurisdiction to make an initial determination of custody under either section 152.201(a)(1)'s home-state jurisdiction or under section 152.201(a)(2)'s significant-connections jurisdiction, recognizing that Texas needs to meet only one of the subsections of 152.201(a) in order to satisfy the first prong. *In re S.L.P.,* 123 S.W.3d 685, 688 (Tex. App.—Fort Worth 2003, no pet.). We then address the second prong and determine whether the state making the initial child-custody decision concluded either that it no longer possesses continuing jurisdiction or that a Texas court would be a

---

[3]*See* Tex. Fam. Code Ann. §§ 152.001–.317 (West 2014 & Supp. 2015).

[4]*See* Fla. Stat. Ann. §§ 61.501–.542 (West 2016).

more convenient forum.  See Tex. Fam. Code Ann. §§ 152.202, .207 (West 2014).

### 2. First prong—jurisdiction to make an initial custody decision

Under the pertinent portions of the first prong of 152.203, a Texas court has significant-connections jurisdiction to make an initial child-custody determination under UCCJEA section 152.201(a)(2) if (1) the child and at least one parent have a significant connection with Texas other than mere presence, (2) substantial evidence is available in Texas concerning the child's care, protection, training, and personal relationships,[5] and (3) a court of the home state of the child determines that it no longer has exclusive, continuing jurisdiction. *S.L.P.*, 123 S.W.3d at 688; *Davis v. Guerrero*, 64 S.W.3d 685, 689 (Tex. App.—Austin 2002, no pet.).

Concerning a child's and at least one parent's significant connections with the state in which the movant is seeking an initial child-custody decision and concerning whether substantial evidence is available in that state, courts consider the nature and quality of the child's contacts with the State.[6]  *See In re*

---

[5]Neither "significant connection" nor "substantial evidence" is defined in the UCCJEA.

[6]UCCJEA sections 152.201 (initial child-custody jurisdiction), .202 (exclusive, continuing jurisdiction), and .203 (jurisdiction to modify) cross-reference and incorporate one another extensively.  *See* Tex. Fam. Code Ann. §§ 152.201–.203.  The existence of significant connections with and substantial evidence in a state is, at least in part, a ground for a court's exercise of jurisdiction under all three subsections.  Therefore, because the terms "significant connection" and "substantial evidence" are given the same meaning under all

*Forlenza*, 140 S.W.3d 373, 378 (Tex. 2004) (orig. proceeding). Some of the factors showing a significant connection to the state and substantial evidence in the state include the following: whether the child resides in the state, whether the child attends school in the state, whether the child's family resides in the state, and whether the parent has made educational plans for the child in the state. *See id.* (recognizing fact that numerous relatives lived in Texas and maintained relationship with child as evidence of significant connection with Texas and that substantial evidence existed in Texas); *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.) (same); *see also Barabarawi v. Rayyan*, 406 S.W.3d 767, 772 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (pointing out absence of evidence of these factors concerning child's relationship with Florida as supporting Texas trial court's exercise of "default jurisdiction" under section 152.201(a)(4) over initial child-custody decision).

### 3. Second prong—when home-state court determines that another court would be a more convenient forum

Under the second prong, a court in Texas is a more convenient forum under section 152.207(b) when the home state is an inconvenient forum considering all relevant factors, including whether domestic violence has occurred and which state could best protect the parties and the child; the length of time the child has resided outside of the home state; the distance between the

---

three subsections, cases decided under all three subsections are authoritative on the issue of what constitutes a significant connection or substantial evidence.

home state and the court in the state that would assume jurisdiction; the relative financial circumstances of the parties; any agreement of the parties as to which state should assume jurisdiction; the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child; the ability of the courts of both states to decide the issue expeditiously; and the familiarity of the courts of each state with the facts and issues in the pending litigation. *See* Tex. Fam. Code Ann. § 152.207(b). This list of factors is not exclusive. *See* Unif. Child Custody Jurisdiction & Enf't Act § 207 cmt., 9 U.L.A. 682 (1997) ("The list is not meant to be exclusive."). A home-state trial court is not required to conduct an evidentiary hearing before making a determination that it is an inconvenient forum. *See Lesem v. Mouradian*, 445 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

## B. Analysis

### 1. Mother's complaint that the UCCJEA does not apply—Florida is the home state under the UCCJEA

We begin by addressing Mother's contention that the UCCJEA does not apply to the Florida court's order. Mother claims that the UCCJEA does not apply because the Florida court only approved the parties' settlement agreement; Mother asserts that, consequently, this order by the Florida court is not an order providing for legal custody, physical custody, or visitation with respect to a child as required to fall within the parameters of the UCCJEA. But the UCCJEA expressly defines a "child custody proceeding" as including a proceeding for

8

paternity. Tex. Fam. Code Ann. § 152.102(4) (West 2014). Thus, the Florida court's order in Father's paternity proceeding—which approves the settlement reached by the parties, declares Father's paternity, provides a parenting plan, and sets a visitation schedule—constitutes a child custody proceeding triggering application of the UCCJEA. *See id.*; *see also In re Calderon–Garza*, 81 S.W.3d 899, 903 (Tex. App.—El Paso 2002, orig. proceeding) (recognizing paternity suit was child-custody suit under UCCJEA).

Thus, by virtue of the Florida court's order in Father's paternity proceeding that declared Father's paternity, provided a parenting plan, and set a visitation schedule, the Florida court made the initial child-custody determination concerning Father and Mother's children and established Florida as the children's home state for purposes of the UCCJEA. *See* Tex. Fam. Code Ann. § 152.102(4), (7), (8) (defining child-custody determination, home state, and initial determination, respectively); *Calderon-Garza*, 81 S.W.3d at 903 (discussing determination of home state under UCCJEA). We cannot agree with Mother's contention that the Florida court's order approving Mother and Father's settlement agreement in Father's paternity suit did not constitute an initial child-custody decision under the UCCJEA.

### 2. First prong—Texas would have jurisdiction to make an initial custody decision

Moving to our analysis under the first prong of the statutory test to determine whether the trial court possessed jurisdiction over Mother's SAPCR to

9

modify the Florida court's order concerning child custody, we examine whether Texas would have jurisdiction to make an initial custody determination under either section 152.201(a)(1) or (2). *See* Tex. Fam. Code Ann. § 152.203; *S.L.P.*, 123 S.W.3d at 688. To recap, section 152.201(a)(2) provides, in pertinent part, that a Texas court may make an initial child-custody determination when the child and at least one of the child's parents has a significant connection with Texas (subsection A) and when substantial evidence is available in Texas concerning the child's protection, training, and personal relationships (subsection B). *See* Tex. Fam. Code Ann. § 152.201(a)(2)(A), (B).

Looking to whether the children and at least one of their parents have a significant connection with Texas and whether substantial evidence is available in Texas concerning the children's protection, training, and personal relationships, the record before us shows the following. The children and Mother have resided in Texas since May 2012. Mother's mother (the children's maternal grandmother) lives in Texas, and Mother and the children resided with her for approximately ten months when they first moved to Texas. *See Forlenza*, 140 S.W.3d at 377 (recognizing fact that children's relatives resided in Texas and maintained relationship with children constituted a significant connection to Texas). Father agreed to permit Mother and the children to move to Texas and to make their home in Texas. *See In re Brilliant*, 86 S.W.3d 680, 691 (Tex. App.—El Paso 2002, no pet.) (recognizing that plans to reside in Texas and raise family there constituted evidence of significant connection with Texas). The

10

children attend school in Texas. The children receive medical care in Texas; they recently had surgery in Texas. The evidence supports the determination that the children and Mother have a significant connection with Texas and that substantial evidence is available in Texas concerning the children's protection, training, and personal relationships. *See cf. Forlenza*, 140 S.W.3d at 377 (requiring evidence only of either a significant connection *or* the availability of substantial evidence). Thus, the first prong of section 152.203's modification jurisdiction is established.

### 3. Second Prong—Texas would be a more convenient forum than Florida[7]

### a. The Florida statute

The inconvenient-forum analysis applies only when a court—such as the home-state Florida court here—has continuing, exclusive jurisdiction but declines to exercise its jurisdiction. In Florida, the home-state court may decline to exercise jurisdiction under section 61.520 of Florida's UCCJEA based on an inconvenient-forum analysis. *See* Fla. Stat. Ann. § 61.520. Section 61.520 of Florida's UCCJEA is identical to section 152.207 of Texas's UCCJEA. *Compare id.*, *with* Tex. Fam. Code Ann. § 152.207. Thus, a Florida home-state court

---

[7]In fact, the inconvenient-forum analysis set forth in section 152.207 is not only the second prong of possible modification jurisdiction under section 152.203 but is also a prong of potential initial child-custody jurisdiction under section 152.201(a)(2). Because the inconvenient-forum analysis is the same for both 152.203 and 152.201(a)(2), we discuss it only once—as the second prong of modification jurisdiction.

11

utilizes the same eight nonexclusive factors set forth in section 152.207 of the Texas family code in determining whether another state is a more convenient forum for a SAPCR than Florida. *See* Fla. Stat. Ann. § 61.520(2) (setting forth list of relevant factors, including time child resided outside home state, parties' circumstances, parties' financial circumstances, any agreement of parties on jurisdiction, location of evidence regarding SAPCR, ability of both courts to expeditiously dispose of SAPCR, and familiarity of each court with facts regarding the issues). The issue of whether the Florida court, as the home-state court, is an inconvenient forum for Mother's SAPCR may be raised on the Florida court's own motion or on request of a Texas trial court. *See id.* § 61.520(1).

### b. Analysis of the nonexclusive inconvenient-forum factors

Applying the inconvenient-forum factors, Mother and the children have resided in Tarrant County, Texas, since May 2012; thus, they had resided outside the home state of Florida for over three years at the time the trial court modified the Florida order. Father agreed to Mother's possession of the children and to their continued residence in Texas per the agreement Mother and Father had reached and the Florida court had approved. The distance between Texas and Florida is over 1,000 miles—requiring lengthy travel by both Mother and the children to pursue and to present testimony in a SAPCR in Florida.

The children attend elementary school in Tarrant County. Under the agreement executed by Mother and Father and approved by the Florida court, Father was granted approximately 160 days per year of possession of the

12

children. Father, who continues to reside in Florida, exercised approximately 42 days of possession in 2013, 54 days of possession in 2014, and 63 days of possession in 2015. Conversely, the children resided in Tarrant County with Mother approximately 323 days in 2013, 311 days in 2014, and 302 days in 2015. According to Mother, Father began exercising more days of possession after she filed her SAPCR seeking modification of the Florida court order. Father testified that he visited the children in Texas and that during summers, they would visit him in Florida.

The agreement Mother and Father reached in Florida provides that enforcement and modification of the agreement shall be brought in Florida so long as one parent continues to reside in Florida—which Father does. *See Hart v. Kozik*, 242 S.W.3d 102, 110 (Tex. App.—Eastland 2007, no pet.) (recognizing that parties' jurisdictional agreement is simply one factor in an inconvenient-forum analysis); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) (explaining that subject-matter jurisdiction "exists by operation of law only, and cannot be conferred upon any court by consent or waiver").

The Florida court possesses no familiarity with the facts or issues surrounding Mother's and Father's relationships with the children nor their exercise of custody of the children because these issues were not litigated in Florida—the Florida court's order simply approved an agreement reached by Father and Mother. The evidence required to resolve Mother's SAPCR is located in Texas where the children reside and attend school. And the trial court is able

to decide Mother's SAPCR expeditiously while the Florida court has failed to rule on anything filed by Father with the Florida court, including Father's motion requesting the Florida court to confirm its continuing jurisdiction and to enforce its final order approving the settlement agreement.[8]

Thus, application of the statutory factors in toto establish that Florida is an inconvenient forum for Mother's SAPCR and that Texas is a more convenient forum than Florida; the only factor supporting continuing jurisdiction in Florida is the parties' agreement. This single factor is not, however, conclusive and is considered along with the other listed nonexclusive factors, which show that Florida is an inconvenient forum and that Texas is a more convenient forum. *See Hart*, 242 S.W.3d at 110 ("The statute does not make a jurisdictional agreement binding upon the court or irrevocable by the parties"). Thus, the nonexclusive statutory factors support the conclusion that the home state of

---

[8]The Florida court's online file for Father's suit reflects that no action has been taken by the Florida court since it signed the final order in 2013 except that the closed case was administratively reopened on February 12, 2015, when Father filed his motion to reopen. To date, the Florida court has conducted no hearings, made no rulings, nor signed any orders during the fourteen months that have elapsed since Father filed his motion requesting the Florida court to confirm its continuing jurisdiction and to enforce its final order approving the settlement agreement. *See* St. Lucie County Clerk, https://courtcasesearch.stlucieclerk.com/BenchmarkWebExternal/CourtCase.aspx/Details/1919434?digest=YxAQo7VUcfXst47F0OleZA (last visited July 8, 2016); *see also* Tex. R. Evid. 201(b)(2), (c)(1) (authorizing appellate court to judicially notice on its own motion facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); *HealthTronics, Inc. v. Laser USA, Inc.*, 382 S.W.3d 567, 576 (Tex. App.—Austin 2012, no pet.) (taking judicial notice of California trial court's records not contained in appellate record).

Florida is an inconvenient forum for Mother's SAPCR and that Texas is a more appropriate forum. *See, e.g.*, *In re Isquierdo*, 426 S.W.3d 128, 135 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding) (explaining that mere fact father continued to reside in UCCJEA "home state" of Texas where initial child-custody decision had been made did not support Texas's exercise of exclusive, continuing jurisdiction over mother's modification proceeding when children had lived in North Carolina for past five years).

### c. The Florida court's implied ruling under the present facts

Although the nonexclusive statutory factors support the determination that Florida is an inconvenient forum for Mother's SAPCR and that Texas is a more appropriate forum, Father points out that the Florida court did not sign an order so holding. Father contends that absent such a written order from the Florida court either declining to exercise its home-state, continuing jurisdiction or declaring that Florida is an inconvenient forum and that Texas is a more convenient forum, the trial court lacked subject-matter jurisdiction over Mother's SAPCR. *See Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.).

The record reflects the following efforts by the trial court and by Father to obtain a ruling from the Florida court concerning whether it would exercise its home-state, continuing jurisdiction over Mother's modification SAPCR. First, at the hearing on Father's motion to dismiss, the trial court said that it would contact the Florida court to discuss the jurisdictional issue and the Florida court's

15

possible retention of continuing, exclusive jurisdiction. Second, on February 5, 2015, Mother filed a written request in the trial court for a UCCJEA conference between the trial court and the Florida court. Third, on February 12, 2015, Father filed a motion to reopen the case in the Florida court and requested it confirm its jurisdiction and enforce its order. Fourth, the following exchange occurred on the record on August 24, 2015, prior to the final trial on Mother's SAPCR, which was more than a year after Mother had filed the SAPCR and approximately six months after Father had filed his motion with the Florida court requesting the Florida court to confirm its jurisdiction:

[Father's counsel]: Your Honor, before we proceed -- I'm sorry.

Before we proceed, Your Honor, I have one thing I need to address with the Court. [Mother's counsel] filed a request for a UCCJEA conference on February 5th, 2015. When we met with Your Honor last time, you said that you had called the court in St. Lucie County, Florida --

THE COURT: Yes.

[Father's counsel]: -- left multiple messages --

THE COURT: Yes.

[Father's counsel]: -- and had yet to get a phone call back. I would just ask, for the record, if the Court could tell us if you ever did hear back from St. Lucie County?

THE COURT: I never did hear back from the Judge in St. Lucie County.

[Father's counsel]: Thank you, Your Honor.

Father's counsel did not seek an abatement pending a response from the Florida court and did not file a mandamus proceeding in Florida in an effort to obtain a

16

ruling from the Florida court on his motion to confirm the Florida court's jurisdiction that he had filed in Florida after Mother had filed her SAPCR in Texas. *See, e.g.*, *Madeira Mgmt., Inc., v. Chapman Realty Corp.*, 459 So. 2d 1177, 1178 (Fla. Dist. Ct. App. 1984) (recognizing petition for writ of mandamus is proper remedy to compel judge to rule).[9]

Father relies on *Saavedra* to support his argument that the trial court lacked subject-matter jurisdiction over Mother's SAPCR because there was no written order from the Florida court declining to exercise its home-state, continuing jurisdiction or declaring that Florida is an inconvenient forum and that Texas is a more convenient forum. 96 S.W.3d at 541. In *Saavedra*, as here, the home-state court failed to communicate with the Texas trial court; but in *Saavedra*, unlike here, the home-state court actually modified its initial child-custody order and specifically stated in the modified order that it continued to maintain exclusive jurisdiction under the UCCJEA. *Id.* at 538. The Florida court here did not sign any type of order indicating that it intended to exercise continuing, exclusive home-state jurisdiction, even though Father had filed a motion requesting such an order. Consequently, *Saavedra* is factually different from the present situation.

---

[9]Father filed a petition for writ of mandamus with this court in July 2015, *see In re Babcock*, No. 02-15-00245-CV, 2015 WL 4775767, at *1 (Tex. App.—Fort Worth Aug. 13, 2015, orig. proceeding) (mem. op.), asserting that the trial court abused its discretion by denying his motion to dismiss Mother's SAPCR. We denied Father's petition for writ of mandamus.

Under the unique facts presented here, we hold that the Florida court's failure to communicate with the trial court for over six months and the Florida court's failure to rule on Father's motion filed with it—for over six months before the trial court proceeded to a final hearing, for over eight months before the trial court signed a final judgment, and for over fourteen months to date—constitutes an implied determination by the Florida court to decline to exercise its home-state jurisdiction and an implied determination by the Florida court that Texas is a more convenient forum for litigation of Mother's modification SAPCR. To hold otherwise would undermine the purposes of the UCCJEA. The comments to the UCCJEA state that the "Act should be interpreted according to its purposes which are to: . . . [p]romote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child" and to promote consistent and speedy resolution of child custody issues involving multiple states. Unif. Child Custody Jurisdiction & Enf't Act §§ 101–405, 9 U.L.A. 649 (1999 & Supp. 2005); *accord Zirkle v. Franklin*, No. 282826, 2008 WL 4228282, at *1 (Mich. Ct. App. Sept. 16, 2008) (not designated for publication) (holding that letter from home-state court implied that it acquiesced to Michigan court's exercising UCCJEA jurisdiction). Consequently, under the narrow facts presented here, we hold that the trial court possessed subject-matter jurisdiction to modify the Florida court's order concerning conservatorship and visitation issues. *See* Unif. Child Custody Jurisdiction &

18

Enf't Act §§ 101–405, 9 U.L.A. 649 (1999 & Supp. 2005); *accord Staats v. McKinnon*, 206 S.W.3d 532, 539 (Tenn. Ct. App. 2006).

We overrule Father's first issue.

## V. JURISDICTION UNDER UNIFORM INTERSTATE FAMILY SUPPORT ACT (UIFSA)

In his second issue, Father asserts that the trial court lacked jurisdiction under the UIFSA to modify the Florida court's order concerning child support; the Florida court order did not order Father to pay child support.

### A. The Law

The UIFSA is a completely different and independent uniform law from the UCCJEA. *See In re M.I.M.*, 370 S.W.3d 94, 97 (Tex. App.—Dallas 2012, pet. denied). While the UCCJEA is applicable to child-custody proceedings, the UIFSA is applicable to child-support proceedings. *See* Tex. Fam. Code Ann. §§ 159.001–.902 (West 2014 & Supp. 2015). When a party seeks to modify a child-support order issued by another state, the UIFSA applies. *See* Tex. Fam. Code Ann. § 156.408(a) (West 2014); *In re T.L.*, 316 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Thus, a party seeking to modify a support order from another state must establish jurisdiction pursuant to the UIFSA, not simply jurisdiction under the UCCJEA. *See M.I.M.*, 370 S.W.3d at 97 (discussing distinction between jurisdiction under UCCJEA and jurisdiction under UIFSA); *In re V.L.C.*, 225 S.W.3d 221, 226 (Tex. App.—El Paso 2006, no pet.) (recognizing that "there are separate and independent jurisdictional requirements

19

that must be met under the UCCJEA and the UIFSA in order to modify an out-of-state order").

Once a court possessing jurisdiction under the UIFSA enters a child-support order, that court becomes the only tribunal authorized to modify the decree for as long as it retains jurisdiction. *See* Tex. Fam. Code Ann. § 159.205 (West Supp. 2015). But when a divorce decree or a child-custody order from another state fails to include a child-support order, the court issuing the divorce decree or custody order does not acquire continuing, exclusive jurisdiction over child-support issues under the UIFSA. *See id.* §§ 159.102(2) (West Supp. 2015) (defining child support order to which UIFSA applies as "support order for a child"), .102(28) (defining support order as a "judgment, decree, order, decision, or directive . . . issued . . . for the benefit of a child . . . that provides for monetary support, health care, arrearages, retroactive support, or reimbursement for financial assistance provided to an individual obligee in place of child support"); *Office of Attorney Gen. v. Long*, 401 S.W.3d 911, 913 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding "absolute divorce" decree issued by North Carolina court did not trigger continuing, exclusive jurisdiction under UIFSA of subsequent petition for child support because decree did not include a support order for a child); *V.L.C.*, 225 S.W.3d at 226–27 (holding court's divorce decree incorporating parties' agreement concerning child support did not constitute "child support order" creating continuing, exclusive jurisdiction in that court under UIFSA). In the absence of an existing child-support order, a petition may be filed

20

in a Texas court by a Texas resident seeking child support for her child so long as the Texas court may obtain jurisdiction over the alleged obligor. *See* Tex. Fam. Code Ann. § 159.201; *M.I.M.*, 370 S.W.3d at 98; *see also* Patricia W. Hatamyar, *Interstate Establishment, Enforcement, and Modification of Child Support Orders*, 25 Okla. City U. L. Rev. 511, 522 (2000) (explaining UIFSA's provision for initial establishment of a child-support order).

## B. Analysis

The settlement agreement signed by Mother and Father and approved by the Florida court in its May 28, 2013 order does not require Father to pay child support. It provides that

> [i]n light of the parties' incomes, the interstate residences of the parties, the Father's sole obligation is to pay travel expenses for himself and the children for transport between Florida and Texas. Neither party will pay child support to the other party. It is the parties' intent and agreement that there will be no retroactive child support due.

This provision does not constitute a "child support order" under the UIFSA. *See* Tex. Fam. Code Ann. § 159.102(2) (defining child support order as a support order for a child). The provision is not a support order because it does not order monetary support, health care, arrearages, retroactive support, or reimbursement for financial assistance provided to an individual obligee in place of child support. *See id.* § 159.102(28) (defining "support order"). Mother and Father's agreement, although approved by the Florida court, simply does not meet the UIFSA's definitions of "support order" and "child support order" as required by the

21

UIFSA to vest continuing, exclusive jurisdiction over child-support determinations in the Florida court. *See id.* § 159.102(2), (28); *Long*, 401 S.W.3d at 913; *V.L.C.*, 225 S.W.3d at 227. Thus, because the Florida court's order does not constitute a child-support order under the UIFSA and because no prior child-support order exists concerning Mother and Father's children, the trial court possessed jurisdiction under the UIFSA to issue a child-support order concerning Mother and Father's children.[10] *See* Tex. Fam. Code Ann. § 159.201; *M.I.M.*, 370 S.W.3d at 98.

We therefore overrule Father's second issue challenging the trial court's jurisdiction under the UIFSA to modify a prior child-support order.

## VI. JURISDICTION TO AWARD ATTORNEY'S FEES

In his third issue, Father argues that because the trial court lacked jurisdiction under the UCCJEA as asserted in his first issue and lacked jurisdiction under the UIFSA as asserted in his second issue, the trial court likewise lacked jurisdiction to award attorney's fees.[11] Because we have held

---

[10]Father did not file a special appearance, appeared in the trial court for the trial of Mother's SAPCR, and does not challenge on appeal the trial court's personal jurisdiction over him; thus, he waived any contention that the trial court lacked personal jurisdiction over him. *See In re Barnes*, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, orig. proceeding) (explaining that a challenge to personal jurisdiction over a party may be waived if not asserted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182 (1985) ("[T]he personal jurisdiction requirement is a waivable right.").

[11]Father does not challenge the amount or reasonableness of the attorney's fees awarded, nor does Father cite any authority in support of this

22

that the trial court possessed jurisdiction of custody issues concerning the children under the UCCJEA and possessed jurisdiction of support issues concerning the children under the UIFSA, we overrule Father's third issue.

## VII. CONCLUSION

Having overruled Father's three issues, we affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and SUDDERTH, JJ.

DELIVERED: July 14, 2016

---

issue. Father's complaint in his third issue is predicated purely on this court's sustaining either his first or second issue.

23