

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00198-CV

**IN THE INTEREST OF A.R.C.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI14592
Honorable John D. Gabriel, Jr.[1], Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: March 4, 2020

AFFIRMED

R.M. appeals the trial court's order dismissing her petition in which she sought to modify an out-of-state child custody order. Because R.M. did not establish the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act for exercising jurisdiction to modify the order have been met, we affirm the trial court's order.

## BACKGROUND

R.M. filed a petition seeking to modify a custody order rendered by a court in Florida. R.M. alleged she is the paternal grandmother of A.R.C., who was three years old when the petition to modify was filed. R.M. sought to be appointed the child's permanent managing conservator.

---

[1] Senior Judge, sitting by assignment

R.M. asserted the court had jurisdiction because Texas had been A.R.C.'s home state within the previous six months.

The mother, appellee C.L., filed a special appearance, plea to the jurisdiction, and answer. The plea asserted lack of personal jurisdiction over her and lack of subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), section 152.203 of the Texas Family Code. She further requested if the court found it had jurisdiction to modify custody, that it decline to do so because the petitioner engaged in unjustifiable conduct. *See* TEX. FAM. CODE § 152.208. C.L. attached an affidavit to the pleading in which she asserted she resides in Florida. She stated A.R.C. was born September 15, 2015, and a Florida court issued a judgment in 2016 awarding custody of A.R.C. to C.L. She also asserted that A.R.C.'s father, C.C., took A.R.C. from Florida and failed to return her to C.L. as ordered by the Florida court. The affidavit states A.R.C. was located and returned to C.L. in June 2018, and the child has resided with C.L. in Florida since then. C.L. also attached certified copies of Florida court documents, which established the following:

In early 2016, C.C. filed an original custody proceeding regarding A.R.C. in a Circuit Court of the First Judicial Circuit in Okaloosa County, Florida. On January 22, 2016, the Florida court temporarily placed A.R.C. in C.C.'s custody. On February 23, 2016, the court ordered C.C. to return A.R.C. to the mother, C.L., no later than February 27, 2016. C.C. did not comply with the order, and on February 29, 2016, the court, the Honorable Circuit Judge Michael Flowers presiding, issued an "Order to Pick-Up Minor Child," directing "any and all" authorized law enforcement officers in Florida and in any other state, to take custody of A.R.C. and have her returned to the jurisdiction of the Florida court. The court's February 29, 2016 order recites that the court "exercised and continues to exercise original jurisdiction over the minor child . . . under the Uniform Child Custody Jurisdiction and Enforcement Act."

On March 4, 2016, C.L. registered the Florida court's February 29, 2016 order with the Bexar County District Clerk, and a writ of attachment issued pursuant to a Bexar County District Court's order. The documents reflect numerous attempts by the Bexar County Sheriff's Department to locate C.C. and A.R.C. The writ of attachment was finally executed on June 15, 2018, and A.R.C. was returned to C.L. in Florida. In the meantime, on May 10, 2016, the Florida Circuit Court, Judge Michael Flowers presiding, issued a final judgment adjudicating C.C. to be A.R.C.'s father. The trial court found C.C. had "secreted the child and failed to return the child to the mother as ordered by [that] court" and found it is in the best interest of A.R.C. for C.L. to have sole parental custody of A.R.C. and for C.C. to have no possession of the child. The court reserved the issues of child support and attorney's fees and ordered that it "retains jurisdiction to enforce and modify the terms of this Final Judgment."

The current proceeding, in which R.M. petitioned for conservatorship, was filed three months after A.R.C. was located in Texas and returned to Florida. In her third amended petition, R.M. alleged the child had been in her physical possession for at least six months ending not more than 90 days preceding the filing of the petition to modify. She asserted the court has jurisdiction over the modification proceeding pursuant to section 152.203 of the UCCJEA because Texas is A.R.C.'s home state, one of her parents lives here, and Texas is the more convenient forum. In affidavits attached to her live petition, R.M. stated that until the writ of attachment was served, she believed her son, C.C., had brought A.R.C. to Texas pursuant to a permanent custody order. She stated she was not aware of any of the other Florida court orders. She alleged that C.L. and C.C. had lived in Texas before A.R.C. was born and that A.R.C. had lived in San Antonio or Devine, Texas, with C.C., R.M., or both of them, from January 12, 2016 until June 15, 2018. She further stated A.R.C. had lived in Texas almost all her life and most of her family and all witnesses except

her mother are in Texas. Finally, R.M. asserted it would be inconvenient for her to travel to Florida.

C.C. filed a counterpetition, seeking to modify the custody order and to be named A.R.C.'s permanent managing conservator and alleging Texas is A.R.C.'s home state and is the most convenient forum. C.C. filed an affidavit in which he stated he and C.L. were residing in Georgia when A.R.C. was born. He alleged that C.L. assaulted him, she fled to Florida to avoid a warrant, and C.L. was in Florida with A.R.C. for about a month before C.L. was arrested and he "retrieved" the child. He stated he moved to San Antonio with A.R.C., where they lived with R.M. until March 2018. Thereafter, A.R.C. lived in Devine with R.M. until the writ of attachment was executed in June 2018.[2] C.C.'s affidavits do not mention the Florida court custody orders, and although he was the petitioner in the original Florida custody case, he swore in his UCCJEA affidavit that he has "not participated, as a party or as a witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child in Texas or any other state."

R.M. requested the trial court confer with the Florida court before declining jurisdiction. *See* TEX. FAM. CODE § 152.110(b) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter."). The trial court scheduled a telephone conference with Judge Flowers in Florida, and the parties received notice. R.M. and C.C. appeared through counsel and were present with the Texas judge for the conference. C.L.'s attorney was present in Judge Flowers's office. No party submitted additional evidence prior to the conference, no party requested to present evidence or argument during the conference, and no party objected that they had been unable to present evidence or argument during the conference. The judges briefly discussed the history of the case, including C.C.'s failure to return the child to C.L. as

---

[2] The record reflects C.C. was in the Wilson County jail when R.M.'s petition to modify was filed.

ordered by the Florida court. The judge of the Florida court stated "the child is here, should never have been taken from here," and ruled that jurisdiction was proper in Florida and his court would retain jurisdiction over the custody matter. The Texas judge deferred to the Florida court's retention of jurisdiction and, on March 18, 2019, signed an order finding that "Florida does not relinquish jurisdiction to the State of Texas" and therefore "jurisdiction of this matter remains with the State of Florida." Holding Texas courts do not have jurisdiction to modify the Florida custody determination, the trial court dismissed the case. No findings of fact were requested or made by either court, and R.M. timely filed a notice of appeal.

**Standard of Review**

Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.). The party initiating suit has the burden to allege sufficient facts to establish subject matter jurisdiction. *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004) (orig. proceeding). When subject matter jurisdiction is based on a statute, the petitioner must show there is jurisdiction under the applicable statute. *In re S.J.A.*, 272 S.W.3d 678, 682 (Tex. App.—Dallas 2008, no pet.) (citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000)); *see In re Barnes*, 127 S.W.3d 843, 846-47 (Tex. App.—San Antonio 2003, orig. proceeding). In our review, we consider relevant evidence when it is necessary to resolve the jurisdictional issue. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see Forlenza*, 140 S.W.3d at 376-78.

**UCCJEA MODIFICATION JURISDICTION**

Jurisdiction over child custody issues in Texas is governed by the UCCJEA. TEX. FAM. CODE § 152.001-.317. Florida has also adopted the UCCJEA. *See* FLA STAT. § 61.501-.542. "The UCCJEA was designed . . . to clarify and to unify the standards for courts' continuing and

modification jurisdiction in interstate child-custody matters." *Forlenza*, 140 S.W.3d at 374. "Previously, state courts modified custody determinations each time a child moved from one state to another, and those orders often conflicted." *In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012) (orig. proceeding). To minimize these conflicts, article 2 of the UCCJEA "specifically grants exclusive continuing jurisdiction over child-custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues." *Forlenza*, 140 S.W.3d at 375 (citing UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202). "Rules that prevent another state from modifying a child-custody determination while exclusive continuing jurisdiction remains in the original-decree state complement these provisions." *Id.* (citing UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202). Texas and Florida have both adopted article 2 of the UCCJEA without substantial variation. *Id.*; *see In re T.B.*, 497 S.W.3d 640, 644-45 (Tex. App.—Fort Worth 2016, pet. denied).

"Generally, the court that made the initial child custody determination (in this case, the [Florida] court) will retain exclusive continuing jurisdiction over ongoing custody disputes." *Saavedra*, 96 S.W.3d at 541. A "child custody determination" is an order of a court "providing for legal custody, physical custody, or visitation with respect to a child." TEX. FAM. CODE § 152.102(3). The parties do not dispute the May 2016 Florida judgment provided for the custody of A.R.C. and was a child custody determination. Jurisdiction to modify another State's child custody determination is set forth in section 152.203 of the Texas Family Code, which provides:

Jurisdiction to Modify Determination

Except as otherwise provided in Section 152.204[3], a court of this state may not modify a child custody determination made by a court of another state unless a

---

[3] Section 152.204 authorizes temporary emergency jurisdiction when a child is present in this state and has been abandoned or it is necessary to protect the child. *See* TEX. FAM. CODE § 152.204.

court of this state has jurisdiction to make an initial determination under Section 152.201(a)(1) or (2) and:

> (1) the court of the other state determines it no longer has exclusive continuing jurisdiction under Section 152.202 or that a court of this state would be a more convenient forum under Section 152.207; or

> (2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

TEX. FAM. CODE § 152.203. However, if a court in this state acquires jurisdiction to modify another state's custody determination because the person seeking to invoke its jurisdiction engaged in unjustifiable conduct, the court must, under some circumstances, decline to exercise jurisdiction. *See id.* § 152.208; *see In re S.L.P.*, 123 S.W.3d 685, 689-90 (Tex. App.—Fort Worth 2003, no pet.) (holding section 152.208 prohibited trial court from exercising jurisdiction to modify Nevada initial custody determination where only reason Texas had become child's home state was mother's actions in bringing child to Texas and keeping her in Texas in violation of Nevada custody determination).

## DISCUSSION

The Florida court's 2016 temporary orders and its subsequent final judgment that declared C.C.'s paternity and awarded custody of A.R.C. to C.L. established Florida as A.R.C.'s home state for purposes of the UCCJEA. *See In re T.B.*, 497 S.W.3d at 646-47. In the final judgment, the Florida court expressly retained jurisdiction to modify and enforce the child custody determination. Therefore, in order to invoke the Texas court's jurisdiction to modify the custody determination, both requirements of section 152.203 must be met. First, at the time the petition to modify was filed, the Texas court would have had jurisdiction under section 152.201 (a)(1) or (2) to issue an initial custody determination and such jurisdiction was not the result of R.M.'s unjustifiable conduct. *See* TEX. FAM. CODE §§ 152.203, 152.208. Second, the Florida court determined that it

no longer had continuing exclusive jurisdiction or that a Texas court would be a more convenient forum; *or* either court determined that A.R.C., C.L., C.C., and R.M. did not reside in Florida when the petition to modify was filed. *See id.* §§ 152.202, 152.203, 152.207. We address the latter requirement first.

The parties do not dispute that C.L. continues to reside in Florida. Therefore, the second prerequisite for the Texas court to have jurisdiction in this case is satisfied only if a Florida court ruled it no longer has exclusive, continuing jurisdiction or that it will not exercise that jurisdiction because Texas is a more convenient forum. *See id.* § 152.203; *Saavedra*, 96 S.W.3d at 541 (holding that as long as one parent continues to live in the original decree state, that state alone can determine whether its jurisdiction continues). The decision about whether Florida retains continuing exclusive jurisdiction over the child custody determination may be made only by the Florida court. *See id.* § 152.203(1) ("the court of *the other state* determines . . . ."); UNIF. CHILD CUSTODY JUR. & ENF. ACT § 152.202 cmt. 1 ("The original decree State is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction."); *id.* § 152.203 cmt. ("The modification state is not authorized to determine that the original decree state has lost its jurisdiction."). Likewise, the court with continuing exclusive jurisdiction must make the determination that Texas is a more appropriate forum. *Saavedra*, 96 S.W.3d at 542.

In her second issue, R.M. asserts "the Courts" "either refused or failed to consider" R.M.'s and C.C.'s affidavits, and argues the evidence in those affidavits establishes that the Florida court no longer has exclusive continuing jurisdiction of any custody determination regarding A.R.C. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202 (setting forth rules for determining duration of court's exclusive continuing jurisdiction). R.M.'s third issue asserts "the Courts" should have determined Texas was the more convenient forum and "Judge Gabriel failed and/or refused to

consider the information provided by Appellant" regarding Texas as being the more convenient forum. R.M. asks this court to review the evidence and declare Texas the more convenient forum.

The record does not support that either court failed or refused to consider the filed affidavits. The record does not reflect which pleadings and affidavits from this case, if any, were made available to or reviewed by the Florida judge before the telephone conference. Moreover, both determinations were solely for the Florida court to make. That court did not determine it no longer had exclusive continuing jurisdiction or that Texas is the more convenient forum; instead, the judge of the Florida court stated it continued to have jurisdiction over the custody determination and that it is not relinquishing its jurisdiction. In the face of those determinations, the Texas trial court had no choice but to decline jurisdiction over the petition to modify. *See* TEX. FAM. CODE § 152.203; *Saavedra*, 96 S.W.3d at 541-42 (holding Texas court could not assert jurisdiction to modify when California court insisted it was retaining jurisdiction of the case). We decline to review the evidence regarding the convenience of the forum because, as previously stated, that determination was for the Florida court to make. *See Saavedra*, 96 S.W.3d at 542 (holding "[i]t is of no consequence that the Texas court determined that it was a more appropriate forum; the California court must make this determination before a court of this state may modify the California court's child custody determination"). Any review of the Florida court's determinations that it retains exclusive, continuing jurisdiction and that Texas is not a more convenient forum must be pursued in the Florida courts.

In her first issue, R.M. argues the trial court erred by not finding the first requirement for jurisdiction to modify under section 152.203 was satisfied. She contends the Texas court had jurisdiction to issue an initial child custody determination under section 152.201(a)(1) because Texas had been A.R.C.'s home state within six months before the proceeding commenced and both C.C. and R.M., who had been acting as a parent, continue to live in Texas. *See* TEX. FAM.

CODE §§ 152.203, 152.201(a)(1); *see also id.* § 152.102(7) (defining "home state"). And, in her fourth issue, R.M. argues the trial court should not have declined to exercise its jurisdiction pursuant to section 152.208 because there is no evidence she was aware of the Florida court's custody orders or that she engaged in any unjustifiable conduct.

The trial court did not make any express findings about either of these issues. However, even if the trial court had made such findings, the second prerequisite for having jurisdiction over the petition to modify the Florida custody order was not met: R.M. did not obtain an order from the Florida court ruling that it no longer had jurisdiction; the Florida court expressly stated that it was retaining jurisdiction over the custody determination; the Florida court did not find Texas was a more convenient forum; and the record shows that the child and a parent continue to reside in Florida. *See Saavedra*, 96 S.W.3d at 541 (holding Texas court's determination that a parent and the children resided in Texas for more than six months before modification suit filed and Texas would have jurisdiction to make an initial child custody determination was "of no significance" where California court did not determine it no longer had jurisdiction or that Texas was more convenient forum). We therefore need not address R.M.'s first and fourth issues. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

As the party seeking to invoke the jurisdiction of Texas courts, R.M. was required to obtain an order from Florida, the original decree state, stating that it no longer has jurisdiction or that Florida declined to exercise its jurisdiction after finding Texas to be a more convenient forum. The Florida court stated it retained jurisdiction and expressly declined to relinquish its jurisdiction. Because the second requirement of section 152.203 was not satisfied, "a court of this state may not modify" the Florida child-custody determination, and the trial court was correct to dismiss the case for lack of subject matter jurisdiction. *See Magera v. Buckley*, No. 03-15-00559-CV, 2016

WL 3974804, at \*3 (Tex. App.—Austin July 22, 2016, pet. denied) (mem. op.); *Razo v. Vargas*, 355 S.W.3d 866, 876-77 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saavedra*, 96 S.W.3d at 541-42.  We therefore affirm the trial court's order.

Luz Elena D. Chapa, Justice