2002 ME 112

Jolie CAMPBELL

v.

Daniel MARTIN.

Supreme Judicial Court of Maine.

Submitted on Briefs: April 18, 2002.
Decided: July 22, 2002.

---

Joseph M. Baldacci, Bangor, for plaintiff.

Defendant did not file a brief.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Jolie Campbell appeals from the judgments of the District Court (Bangor, *Gunther, J.*) dismissing her parental rights and responsibilities complaint for lack of jurisdiction and modifying a protection from abuse order. Campbell contends that the court erred by declining to exercise jurisdiction pursuant to 19–A M.R.S.A. § 1748 (Supp.2001) and by vacating those portions of the protection from abuse order that had an effect on the relationship between her child and Daniel Martin, the child's biological father. We affirm the judgments of the District Court.

## I. BACKGROUND

[¶ 2] Campbell fled Kentucky and came to Maine with her daughter because she feared that Martin would abuse her and their daughter. She alleges that Martin threatened to kill them after she sought a protection order in Kentucky. A temporary order for protection from abuse, entered by the District Court in Bangor, ordered Martin not to have contact with Campbell and his daughter and awarded temporary custody of the child to Campbell. After a hearing, a protection from abuse order was issued and Campbell was awarded primary residence of the child pursuant to 19–A M.R.S.A. § 4007 (1998 & Supp.2001).

[¶ 3] Campbell subsequently filed a complaint in the District Court for determination of paternity, parental rights and responsibilities, and child support pursuant to 19–A M.R.S.A. §§ 1553, 1653, 2006 (1998 & Supp.2001). By that time, Martin had filed his own paternity action in Kentucky. At some later date, Martin filed a motion to establish custody and visitation in the Kentucky paternity proceeding.

[¶ 4] An interstate telephone conference was held between Judge Gunther of the Maine District Court and Judge Johnson

of the Montgomery District Court in Kentucky in accordance with 19–A M.R.S.A. § 1740 (Supp.2001). Following that conversation, Judge Gunther entered a Summary of Interstate Conference, as required by 19–A M.R.S.A. § 1740(4), and concluded that Kentucky is the child's home state pursuant to 19–A M.R.S.A. § 1745–(1)(A) (Supp.2001) and that Kentucky has not declined to exercise jurisdiction.

[¶ 5] In order to afford Campbell an opportunity to object to the consequent anticipated change to the protection from abuse order, the District Court granted Campbell a brief period of time within which to challenge its jurisdictional conclusions. The court held a show cause hearing and subsequently issued an order dismissing the complaint for determination of paternity, parental rights and responsibilities, and child support for lack of jurisdiction. The court concluded that 19–A M.R.S.A. § 1748 "would not permit the State of Maine to retain jurisdiction when Kentucky intends to exercise it." With regard to the protection from abuse order that was issued in a separate proceeding, the court left the order in place but ordered that the portion awarding Campbell primary residence of the child and other provisions purporting to affect the relationship between Martin and the child would cease to be effective on July 27, 2001, the date of the next scheduled hearing in Kentucky. Campbell appeals from the decisions in both the protection from abuse proceeding and the parental rights proceeding.

## II. DISCUSSION

### A. Jurisdiction

■ [¶ 6] Whether Maine courts have jurisdiction to hear a claim is a question of law subject to de novo review. *Francis v. Pleasant Point Passamaquoddy Hous. Auth.*, 1999 ME 164, ¶ 5, 740 A.2d 575, 577. In matters regarding the care of children when there is an interstate dispute, jurisdiction is statutorily established by the Uniform Child Custody Jurisdiction and Enforcement Act, 19–A M.R.S.A. §§ 1731–1783 (Supp.2001). When Maine is not the child's home state, Maine courts generally will not exercise jurisdiction over the initial custody determination unless the home state declines to exercise jurisdiction.[1] 19–A M.R.S.A. § 1745.

[¶ 7] In urgent circumstances, however, such as when a parent and child flee their home state due to threats of mistreatment or abuse, the courts of Maine are authorized by a separate section of the U.C.C.J.E.A. to exercise emergency jurisdiction in order to protect the child. 19–A M.R.S.A. § 1748.[2] Thus, the Maine District Court unquestionably had jurisdiction, pursuant to 19–A M.R.S.A. § 1748, to

---

**1.** The District Court correctly determined that Kentucky was the home state of Campbell and her child when the complaint for determination of paternity, parental rights and responsibilities, and child support was filed. " 'Home state' means the state in which a child lived with a parent or person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." 19–A M.R.S.A. § 1732(7). Maine courts do not have jurisdiction pursuant to 19–A M.R.S.A. § 1745 because Maine is not the home state of the child, *see* 19–A M.R.S.A. § 1745(1)(A), and Kentucky, the home state, has not declined to exercise jurisdiction over the initial determination of custody, *see id.* § 1745(1)(B)-(C).

**2.** The statute provides:

A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse. 19–A M.R.S.A. § 1748(1).

enter the protection from abuse order when Campbell and her daughter first arrived in Maine.

[¶ 8] At issue now is whether the U.C.C.J.E.A.'s emergency jurisdiction provisions also provide Maine courts with jurisdiction over Campbell's separate complaint for determination of paternity, parental rights and responsibilities, and child support. The comment to section 1748 emphasizes that a determination made pursuant to a court's emergency jurisdiction is temporary, intended "to protect the child until the State that has jurisdiction under Sections ... 1745 to 1747 enters an order." U.C.C.J.E.A. § 204 comment (1997). Once a Maine court issued a protection from abuse order and granted Campbell temporary residence of her child, a separate and more permanent adjudication of the rights of the parties was not justified by section 1748 because the exercise of jurisdiction was no longer necessary to protect the child. Because no other provision of the U.C.C.J.E.A. authorizes Maine's jurisdiction, the District Court properly dismissed the parental rights complaint, deferring to the court of the child's home state to exercise its jurisdiction.

B. Protection Order

[¶ 9] Campbell also argues that the District Court erred when it vacated portions of the protection from abuse order before a final order of another state had been entered. Section 1748, however, gives the District Court discretion in determining the length of time the emergency order is to remain in effect.

> If ... a child custody proceeding has been commenced in a court of a state having jurisdiction under sections 1745 to 1747, any order issued by a court of this State under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 1745 to 1747. The order issued in this State remains in effect until an order is obtained from the other state within the period specified or the period expires.

19–A M.R.S.A. § 1748(3).

[¶ 10] Here, the initial protection from abuse order was originally to remain in effect until March 18, 2003. The District Court modified the order so that provisions purporting to affect the relationship between Martin and the child would be in effect only until July 27, 2001, the date of the anticipated court action in Kentucky. Because a hearing was scheduled in Kentucky on that day, the District Court judge had personally spoken with the Kentucky judge, and Kentucky was the child's home state, the District Court's determination that the July 27 date would be adequate to give Campbell time to obtain an order from Kentucky did not exceed the bounds of its discretion.[3]

The entry is:

Judgment affirmed.

---

3. The court, in its discretion, could have left the protection order in place until such time as the Kentucky court actually entered an order determining custody of the child. Such an approach is advisable if there is any uncertainty as to whether the foreign court will enter an order on the scheduled hearing date.