2010 ME 22

**Samantha RAINBOW**

v.

**Timothy R. RANSOM.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 25, 2010.

Decided: March 16, 2010.

Timothy Ransom, Holualoa, HI, pro se.

Samantha Rainbow did not file a brief.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Timothy R. Ransom appeals from a judgment entered in the District Court (York, *Cantara, J.*) in a parental rights action, 19–A M.R.S. § 1653 (2009), awarding residency and sole parental rights for the parties' only child to Samantha Rainbow. Ransom argues that, pursuant to the terms of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 19–A M.R.S. §§ 1731–1783 (2009), and because Maine was not the child's home state, the court was without jurisdiction to enter a parental rights and responsibilities order.

[¶ 2] Although the child did not live in Maine long enough to establish statutory home-state status, because the Hawaii court ceded authority to Maine, and the record supports the conclusions that mother and child came to Maine to escape domestic violence and that the mother's relatives in Maine provide significant contacts with Maine, the Maine court could properly exercise jurisdiction. Accordingly, we affirm the judgment.

## I. CASE HISTORY

[¶ 3] Because Ransom did not provide us with a transcript of the hearing below, we must assume that the record would support the trial court's findings and evidentiary rulings. *Jefts v. Dennis*, 2007 ME 129, ¶ 7, 931 A.2d 1055, 1057; *Putnam v. Albee*, 1999 ME 44, ¶ 10, 726 A.2d 217, 220.

[¶ 4] The available record and the trial court's findings reflect the following case history. The parties are the parents of one son, who was born in May 2005, while the parties lived together in Hawaii. During that time, Rainbow was the primary caregiver, providing day-to-day care for the child. The parties' relationship was abusive. On several occasions Ransom assaulted, threatened, and intimidated Rainbow. On some occasions, this abuse occurred in the presence of their child, who was traumatized and potentially endangered.

[¶ 5] As a result of the domestic violence, Rainbow, along with the child, left Hawaii for Maine in 2007. Rainbow has several relatives, including her mother, who reside in Maine. After Rainbow's arrival in Maine, Ransom placed several intimidating phone calls to Rainbow. In November 2008, Rainbow was granted a protection from abuse order against Ransom, after the Maine court (*Stavros, J.*) made an initial determination of child custody, pursuant to 19–A M.R.S. § 1748(1).[1]

[¶ 6] On January 8, 2008, Ransom filed a complaint for a determination of parental rights and responsibilities in the Hawaii court system. Soon thereafter, Rainbow filed a complaint for a determination of parental rights and responsibilities in the Maine District Court.

[¶ 7] On March 28, 2008, the court (*Stavros, J.*) accepted jurisdiction of Rainbow's complaint, after a telephone conference with the judge assigned to Ransom's action in Hawaii. Although the courts acknowledged that Hawaii is the child's home state, as defined by 19–A M.R.S. § 1732(7),[2] both courts agreed, and the Maine court found, that Maine is the more appropriate forum. Consequently, the Hawaii court declined to exercise its jurisdiction as the child's home state, and dismissed Ransom's pending action.

[¶ 8] In reaching its decision to exercise jurisdiction, the Maine court found that the child has significant contacts in Maine and that there is substantial evidence in Maine regarding the child's present and future care, protection, training, and personal relationships. In addition, the court found that domestic abuse had occurred in Hawaii, and found that there was justification for Rainbow to leave that state and seek a protection from abuse order in Maine.

[¶ 9] Rainbow has since started college in Montana, and is currently pursuing a degree in health care, living in Montana with the child. After learning of Rain-

---

**1.** Title 19–A M.R.S. § 1748(1) (2009) provides that a "court of this State has temporary emergency jurisdiction if the child is present in this State and ... it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse."

**2.** The UCCJEA defines "home state" as:

[T]he state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
19–A M.R.S. § 1732(7) (2009).

bow's move to Montana, Ransom moved to reverse jurisdiction. That motion was denied.

[¶ 10]   On July 8, 2009, after a hearing at which both parties were present, the court awarded primary residency and sole parental rights to Rainbow.   In support of its parental rights allocation, the court found that Ransom "on several occasions, assaulted Plaintiff, threatened Plaintiff, intimidated Plaintiff, often in the presence of the parties' son."   The court also found that Ransom's abusive behavior was "potentially endangering" the child and that Ransom had continued his "abusive, threatening and intimidating behavior" towards Rainbow through telephone calls since Rainbow had left Hawaii.

[¶ 11]   Ransom was awarded reasonable rights of parental contact, with the right to visit the child in Montana or Maine.   Ransom filed this appeal of the parental rights and responsibilities order.

## II.   LEGAL ANALYSIS

■ [¶ 12]   Ransom argues that the Maine court erred by exercising jurisdiction over this dispute because Maine is an inconvenient forum and not the child's home state, as defined by 19–A M.R.S. § 1732(7).

■ [¶ 13]   Whether the court had jurisdiction to hear Rainbow's complaint is a question of law that we review de novo. *Campbell v. Martin*, 2002 ME 112, ¶ 6, 802 A.2d 395, 397.   Jurisdictional questions regarding the determination of child custody are governed by the UCCJEA and its federal counterpart, the Parental Kidnapping Prevention Act (PKPA).   28 U.S.C.S. § 1738A (2003); *see Barclay v. Eckert*, 2000 ME 10, ¶ 8, 743 A.2d 1259, 1262.

[¶ 14]   Both the UCCJEA and the PKPA seek to prevent conflict between forums by favoring the home state of the child.   *Alley v. Parker*, 1998 ME 33, ¶ 4, 707 A.2d 77, 78.   Nonetheless, the home state of the child may not always be the most appropriate forum for a parental rights determination, particularly if domestic violence has occurred, and is likely to continue, in the home state.   *See* 19–A M.R.S. § 1751(2)(A).[3]   The UCCJEA specifically states that Maine courts can consider, amongst other factors, "which state could best protect the parties and the child."   19–A M.R.S. § 1751(2)(A).

[¶ 15]   If the child's home state has determined that it is not the appropriate forum and declines jurisdiction, as the Hawaii court did here, Maine may exercise jurisdiction if two elements are met: (1) the child and the child's parent have a significant connection to Maine, and (2)

3.   Section 1751(2) explains that before considering whether it is an inconvenient forum, the court must first determine whether it is appropriate for a court of another state to exercise its jurisdiction by examining the following statutory factors:

   A.   Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
   B.   The length of time the child has resided outside this State;
   C.   The distance between the court in this State and the court in the state that would assume jurisdiction;

   D.   The relative financial circumstances of the parties;
   E.   Any agreement of the parties as to which state should assume jurisdiction;
   F.   The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
   G.   The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
   H.   The familiarity of the court of each state with the facts and issues in the pending litigation.
   19–A M.R.S. § 1751(2) (2009).

substantial evidence is available in Maine regarding the child's future care, protection, training and personal relationships. *See* 19–A M.R.S. § 1745(1)(B); *see also Gutierrez v. Gutierrez*, 2007 ME 59, ¶ 12, 921 A.2d 153, 156 (stating that "a Maine court has jurisdiction only if Maine is the child's home state or another court ... declines jurisdiction").

[¶ 16] Here, there is no dispute that Hawaii is the home state of the child because it is where Rainbow and the child resided for most of the child's life. However, after the Maine court properly communicated with the Hawaii court, *see* 19–A M.R.S. § 1740,[4] the Hawaii court declined to exercise its jurisdiction, and both courts concluded that Maine is the more appropriate forum. This conclusion was entirely appropriate given the finding of domestic violence, and it reflects the need to protect both Rainbow and the child from remaining in a jurisdiction that is potentially dangerous.

[¶ 17] Appropriately, the Maine court recognized that its inquiry did not end with the conclusion that Maine is more appropriate than Hawaii as a forum. The court next considered whether the parties' child and Rainbow have significant connections to Maine, and whether there is substantial evidence available here with regard to the child's well-being. Evidence of those elements included the residence of Rainbow's mother and other relatives in Maine, their support for Rainbow and the child, and their continued interest in the child's well-being. Finding that each additional element was satisfied, the court concluded that jurisdiction was proper. Consequently, the Maine court complied with the specific provisions of the UCCJEA, and did not err by exercising jurisdiction and entering the parental rights and responsibilities order.

The entry is:

Judgment affirmed.

---

4. Section 1740 states as follows:

   **1. Communication permitted.** A court of this State may communicate with a court in another state concerning a proceeding arising under this chapter.

   **2. Participation of parties.** The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

   **3. Communication without informing parties; no record required.** Communication between courts on schedules, calendars, court records and similar matters may occur without informing the parties. A record need not be made of the communication.

   **4. Communication and informing parties; record required.** Except as otherwise provided in subsection 3, a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.

   **5. Record.** For the purposes of this section, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

19–A M.R.S. § 1740 (2009).