MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 127
Docket:       Yor-16-20
Submitted
  On Briefs:  July 20, 2016
Decided:      August 11, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## GUARDIANSHIP OF MARVILINE LUNEAU

PER CURIAM

[¶1]  Mark Langlais appeals from two judgments of the York County Probate Court (*Nadeau, J.*) adjudicating Marviline Luneau incapacitated and appointing the Department of Health and Human Services her temporary public guardian pursuant to 18-A M.R.S. §§ 5-310-A, 5-601 (2015) and her permanent public guardian pursuant to 18-A M.R.S. §§ 5-304, 5-601 (2015). The court made detailed findings, which we assume are supported by the record because Langlais did not provide a transcript on appeal. *See Greaton v. Greaton*, 2012 ME 17, ¶ 2, 36 A.3d 913.  The case history, stated below, is based on those findings and documents in the record, particularly a visitor's report.

### I.  CASE HISTORY

[¶2]  Luneau is ninety-one years old.  Langlais is twenty-nine years younger than Luneau, and he is the older brother of Luneau's daughter's

husband. Langlais had known Luneau since his childhood, and shortly after they were reintroduced in 2006, Langlais sold his home and began living with Luneau. They lived together until Luneau's hospitalization and subsequent transfer to a nursing home in 2015.

[¶3] Luneau has a ten-year history of serious medical issues that need not be recounted here.

[¶4] Langlais suffers from PTSD, related anxiety, and chronic insomnia. He is prescribed medications for these conditions but refuses to take them. When Luneau was living with Langlais, she "spent most of her days and nights lying in a recliner chair" and "was substantially immobile and was normally clad in a night gown." Langlais "kept all windows closed and blocked from outside light and observation" and "admonished [Luneau] from responding to knocks on the door when he was away." Langlais's "apparent alcoholism" and his "complex PTSD and chronic insomnia . . . render him materially unavailable, if not also inappropriate, to be deemed suitable to serve as [Luneau]'s guardian."

[¶5] Luneau was hospitalized twice in 2015. During the second hospitalization, her doctor "noted a 'failure-to-thrive' and 'inappropriate conditions of her home, which sometimes included neglect and possible abuse

from the part of her significant other.'" Luneau's doctor opined that she was unable to care for herself and that Langlais was ill suited to care for her.

[¶6]  As of the date of the judgment, Luneau resided at Berwick Estates in South Berwick.  There, Luneau was "well cared for, neatly dressed, well fed and hydrated, timely and regularly medicated, and happy."  Luneau was "also visited regularly by [her daughter] and occasionally by other family members including her great-grandchildren," a situation "that had not prevailed since at least 2013."

[¶7]  The Department filed a petition for ex parte appointment of a public guardian on July 15, 2015, after the Department learned of allegations of inappropriate and unwanted physical contact by Langlais against Luneau in her nursing home.

[¶8]  Following a hearing on July 16, 2015, the court (*Longley, J.*) appointed the Department Luneau's temporary guardian on July 17, 2015.  On the same day, the court (*Nadeau, J.*) appointed a visitor.  In the visitor's report, the visitor opined that Luneau is incapacitated and recommended that the Department be appointed her permanent guardian.  The visitor stated that Luneau does not wish to contest either the temporary or permanent guardianship because she is not capable of understanding the proceedings.

4

[¶9] The court held a four-day hearing on the Department's petition on September 11 and 25 and October 28 and 29, 2015. Luneau was present for the first day of the hearing and testified. Based on her testimony, the court found that Luneau was incapacitated and required a guardian, but that Luneau desired to contest the appointment of the Department. Based on this finding, the court appointed an attorney to represent Luneau. Luneau was not present for the remaining three days of the hearing, "due to both [her attorney]'s and the Court's assessments that [Luneau]'s presence and participation in the proceeding would add no probative value to the course of the proceedings."

[¶10] On November 3, 2015, the court entered two judgments, one appointing the Department Luneau's temporary guardian, and one appointing the Department Luneau's permanent guardian. The court made thorough findings and concluded that Luneau is incapacitated and that, because no suitable alternative exists, the Department should be appointed her guardian. The findings were stated in the order regarding the temporary guardianship, but both orders indicate that the findings in the order regarding the temporary guardianship also apply to the permanent guardianship order. This appeal followed.[1]

---

[1] The heading of the notice of appeal suggests that only the temporary guardianship is being appealed. However, the notice of appeal specifically refers to the permanent guardianship order as

## II. LEGAL ANALYSIS

[¶11]  Langlais's central argument is that the court made numerous procedural errors in its appointment of a temporary public guardian.  That argument is moot, however, because the temporary guardianship expired when the court appointed the Department Luneau's permanent guardian.  *See* 18-A M.R.S. § 5-310-A(c); *In re Guardianship of Young*, 2014 ME 80, ¶ 2, 95 A.3d 607 (dismissing as moot an appeal from an expired temporary guardianship).

[¶12]  As to the permanent guardianship, Langlais argues that the court failed to (1) apply the correct standard of proof, (2) conduct a full hearing on the merits, and (3) craft a guardianship order that guarantees Luneau "maximum self reliance" as required by 18-A M.R.S. § 5-304(a).

[¶13]  Findings supporting the appointment of a permanent guardian must be made by clear and convincing evidence.  18-A M.R.S. 5-304(b).  The court's judgment appointing a permanent public guardian states that the court made its findings supporting the appointment "as required by 18-A M.R.S.

one of the orders being appealed.  The Probate Court's original orders were entered into the docket on November 9, 2015.  A motion to alter or amend was filed on November 17, 2015, which stayed the time for filing the notice of appeal.  M.R. App. P. 2(b)(3).  The heading of the motion suggested that it was limited to the temporary guardianship order, but the body of the motion makes it evident that it addressed both orders.  The court's ruling on the motion to alter or amend was docketed on December 23, 2015, and the timely notice of appeal was filed on January 11, 2016.

6

§ 5-304." Contrary to Langlais's contention, the court made its findings supporting the appointment of a permanent public guardian by the correct standard of proof.

[¶14] Before appointing a permanent guardian, the court is required to conduct a hearing and find that "the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as a means of providing continuing care and supervision of the incapacitated person." 18-A M.R.S. § 5-304(b). On the final day of the hearing, the parties conceded that Luneau is incapacitated and requires a permanent guardian. The court's thorough findings following a four-day hearing indicate that the process was sufficient to satisfy 18-A M.R.S. § 5-304(b) with regard to the court's decision that Langlais is not suitable to serve as Luneau's permanent guardian.

[¶15] Title 18-A M.R.S. § 5-304(a) requires that guardianships "encourage the development of maximum self reliance and independence of the incapacitated person." Langlais argues that the court failed to fulfill this requirement by declining to appoint Langlais as Luneau's guardian.

[¶16] The court found that Langlais was unsuitable to serve as Luneau's guardian based on findings regarding Langlais's prior care for Luneau,

Langlais's contentious relationship with Luneau's family members, and Langlais's "apparent alcoholism," PTSD, and chronic insomnia.

[¶17]  As previously noted, Langlais did not provide a transcript of the proceedings to support his appeal.  In an appeal without a transcript, we will assume that there is sufficient competent evidence in the record to support the trial court's findings of fact and the discretionary rulings on evidence, procedure, and remedies made during the course of the proceeding.  *Greaton v. Greaton*, 2012 ME 17, ¶ 2, 36 A.3d 913; *Rainbow v. Ransom,* 2010 ME 22, ¶ 3, 990 A.2d 535.  Because the court found that Langlais was unsuitable to serve as Luneau's guardian, it was not error for the court to decline to appoint him Luneau's guardian.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

> Gregory O. McCullough, Esq., Sanford Law Offices, Sanford, for appellant Mark Langlais

> Janet T. Mills, Attorney General, and Daniel J. Eccher, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

York County Probate Court docket number 2015-0601