

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00360-CV

_____

IN THE INTEREST OF J.P. AND A. P., CHILDREN

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-107308-18

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Opinion by Justice Kerr

## OPINION

The trial court terminated Father's and Mother's parental rights to their children, J.P. (John) and A.P. (Ann).[1] On appeal, Mother asserts in a single issue that the termination judgment is void because a Michigan court had exclusive, continuing jurisdiction over the children, and in a slight variation on Mother's issue, Father asserts in his sole issue that because the Texas court did not follow all statutory procedures, it "improperly assumed jurisdiction." Regardless of how Mother and Father worded their respective issues, they both challenge subject-matter jurisdiction and claim that the judgment is void. We disagree.

Under the Uniform Child Custody Jurisdiction and Enforcement Act, the Michigan court waived its exclusive, continuing jurisdiction—which had been acquired by its entering earlier custody orders involving John and Ann—and the Texas court then properly exercised modification jurisdiction. *See* Tex. Fam. Code Ann. §§ 152.201–.203. We affirm the trial court's judgment.

### Chronology

- In 2009, a Michigan trial court identified Father and Mother as John's biological parents and signed a judgment awarding Mother "sole legal and physical custody of [John]."

---

[1] We refer to the parents simply as Father and Mother and to the children by the aliases of John and Ann. *See* Tex. R. App. P. 9.8(b)(2) (requiring courts to use aliases to refer to minors in parental-rights-termination cases and—if needed to protect the minors' identities—to also use aliases when referring to family members); *see also* Tex. Fam. Code Ann. § 109.002(d).

- In 2012, the same Michigan trial court identified Father and Mother as Ann's biological parents and signed a judgment awarding Mother "sole legal and physical custody of [Ann]." In that judgment, the Michigan trial court consolidated John's and Ann's cases.

- In November 2016, Mother and the children moved to Texas. Father remained in Michigan.

- In April 2018, the Texas Department of Family and Protective Services filed in Texas its original petition invoking an emergency removal of John and Ann from Mother's custody and seeking to terminate Father's and Mother's parental rights to both John and Ann.

- In May 2018, Father was charged in Michigan with three counts of delivering or manufacturing a controlled substance.

- Unrelatedly but also in May 2018, the Department filed its first amended termination petition. In it, the Department stated, "Continuing jurisdiction over the children has been established in another Court, and a timely transfer will be sought." Confusingly, though, two affidavits dated April 2018 and submitted in support of removing the children contain a paragraph headed "Information to be submitted to the Court Pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act" stating that the Department "does not have information of any proceeding concerning the child pending in a court of this or any other state."

- In Mother's July 2018 answer to the Department's petition, she stated that "[t]his Court has acquired and retains continuing, exclusive jurisdiction of this suit and of the children the subject of this suit as a result of prior proceedings," presumably referring to the Texas court's initial emergency orders. Father entered a general denial.

- From May 2018 until August 2019, neither the parties nor the trial court addressed any jurisdictional issue.

- On the morning of the scheduled jury trial on termination, August 20, 2019, Mother filed a motion to dismiss for lack of jurisdiction asserting that the Michigan trial court had exclusive, continuing jurisdiction.[2]

### The Jurisdictional Proceedings

The trial court heard Mother's motion to dismiss that same morning, initially ordering a brief recess so that it and the other parties could review Mother's motion and so that it and the Department could make "some phone calls."

After the break, the trial court reported,

So I just came off a phone call with Judge Pittman in the 14th Circuit Court in Michigan in Muskegon County and we conversed a little bit about this case, and it was -- the case in Michigan started out as a paternity establishment and so that's why the Court has jurisdiction and gave sole conservatorship to mother, legal possession as well as physical possession.

It appears that in this discussion, this mother and the child [have] contacts in Texas now without any significant contacts in Michigan, and so Judge Pittman is willing to waive jurisdiction in order for us to proceed because he felt like, in his words, there were concerns about the welfare of the child that have been moved all the way to the point of final trial that he didn't want to frustrate that process, kind of giving full faith [to] Texas'[s] concern and child welfare laws and so what Judge Pittman asked is -- I did ask for a written confirmation. He did instruct me that he wanted our social services person or kind of a thereby counterpart -- kind of the District Attorney's Office to go ahead and send him [an] e-mail directly stating that the child did have contacts here

---

[2]Mother sought dismissal under Family Code Section 155.102: "If a court in which a suit is filed determines that another court has continuing, exclusive jurisdiction of the child, the court in which the suit is filed shall dismiss the suit without prejudice." Tex. Fam. Code Ann. § 155.102. As we will discuss, although a Michigan court had exclusive, continuing jurisdiction when the Department filed its petition and when Mother filed her motion, that court waived its jurisdiction under the UCCJEA.

4

in Texas -- significant contacts here in Texas without significant contacts in Michigan, the mother and child, and that -- is asking the Court to confirm that they are willing to waive jurisdiction and so here is Judge Pittman's e-mail address that he asked me to give to you and that he is waiting by the computer now for that e-mail so he can confirm.

When questions arose about whether the Michigan trial judge was aware that Father was still in Michigan,[3] the trial court responded,

I did inform the other judge that the father -- I was not aware if he was in Michigan or not. Those were specifically my words, that I couldn't confirm that the father did not have ties there, but Judge Pittman reiterated that the mother had sole conservatorship of the child, like the father didn't have rights and kind of based on the context of the conversation, it seemed like that was a significant factor for Judge Pittman to make the decision.

To address this concern, the trial court asked the Department, when e-mailing the Michigan trial court, to include certain information:

[THE COURT:] So Judge Pittman is waiting. Okay.

[Department's counsel]: Yes.

THE COURT: So -- that -- he specifically instructed for our governmental agency to send him an e-mail directly. So what I will want -- I think the key issue is, there is a previous order out of Michigan. He

---

[3]Mother objected as follows:

Judge, for the record, I'm going to make an objection under Section 152.110, communication between the Court. First of all, I wasn't on notice until I returned to the room, the District Attorney had handed you the phone with Judge Pittman on the line. We had a right to be a part of that conversation to offer facts. The father still lives in Michigan. I'm not sure if the Court did that. We were entitled to a record of the discussion you had with Judge Pittman and there's no record. So I would object to those discussions.

does have the cause number, all right, and that the mother has sole conservatorship over the child. Legal and physical custody, I think is what their language is and that the father is currently still a Michigan resident. He's incarcerated in Michigan, all right, and that we're looking for that court to either waive jurisdiction or -- and how long has the child and Mom lived here?

[Department's counsel]: My understanding is --

[Mother's counsel]: 2017.[4]

THE COURT: 2017. Okay. And put the date the mother and child moved here and with those facts, I think those are the key -- as a judge, those are the key issues I'm looking at; when did Mom get to my state, who has legal possession of the child, and what about the father who is not terminated, where is he a resident of.

And so I -- that's what I would consider. If Judge Pittman wants to take those facts and then make his decision on that then we can go forward.

During another short break beginning at 9:24 a.m., the Department sent the e-mail to the Michigan trial court, all the attorneys, and the Texas trial court. The Michigan trial court responded by e-mail at 9:46 a.m.[5] When the hearing resumed at 9:54 a.m., the Texas trial court allowed Mother to present and argue her motion, which Father joined.

Near the hearing's end, while ruling, the trial court read the Michigan judge's e-mail into the record:

---

[4]At the termination trial, Mother testified that she and the children had moved to Texas in November 2016. John's teacher stated that John became her student in 2017 during the 2016–2017 school year.

[5]None of these e-mails is in the record.

6

So [Mother's counsel], regarding your Motion to Dismiss, while the Court will find that the State of Michigan did have continuing exclusive jurisdiction over this child prior to the date of this filing and even prior to today, the statute does allow courts to confer because the overwhelming interest is the best interest of the child and to ensure that things are done expediently and in a manner that's consistent with what is best for children . . . .

So there was a conference. There seems to be -- or at least the Court is unaware of any kind of timeline or requirement or restriction on when courts can confer and grant or waive jurisdiction [over] a child. I think at the time of final order, this Court would still have to have jurisdiction over a child, and you raise a good point in finding this previous [Michigan] order from 2008. There is an e-mail sent by Judge Pittman of [Muskegon] County, Michigan[,] which I believe has gone to all the parties as well as this Court that states: [Department's counsel], pursuant to consultation with [the Tarrant County juvenile-district-court judge], this Court is satisfied that the best interest of the minor children and their mother, who have resided in Tarrant County since 2017, in the interest of justice are best served by this Court hereby declining the retention of jurisdiction over these parties and the now dormant proceedings in Case 08-241303-DP, regards the Honorable Gregory C. Pittman, Presiding Judge, 14th Circuit Court-Family . . . Division Muskegon County, Michigan.

After some discussion about the fact that two cause numbers were involved in the Michigan proceedings, the trial court added these comments and denied the motion to dismiss:

So the concern for this Court is ensuring that we have final resolution for the children in an expeditious manner and given the significant contacts with the children and the mother to the [S]tate of Texas, despite the Department['s] not having looked up the [S]tate of Michigan which I feel like is a duty the Department has, certainly not anybody else's, if anything, as to Plaintiff or the Petitioner but certainly not disregarding the fact that they represent the State of Texas, it is this Court's opinion that jurisdictional issues are satisfied with the State of Texas['s] obtaining jurisdiction over the children regarding this matter. So the Motion to Dismiss is denied.

7

Following a jury verdict in the Department's favor, the trial court entered a termination order that included the following language: "This court conferred with the 14th Judicial Circuit Court of Muskegon Co[.], MI[,] and the judge of said court waived jurisdiction."

## Standard of Review

Whether a court has subject-matter jurisdiction is a question of law that we review de novo, and whether undisputed evidence of jurisdictional facts established a trial court's jurisdiction is also a question of law. *In re T.B.*, 497 S.W.3d 640, 644 (Tex. App.—Fort Worth 2016, pet. denied).

## The UCCJEA

Texas has adopted the UCCJEA, which is codified in Chapter 152 of the Family Code. *See* Tex. Fam. Code Ann. §§ 152.001–.317. The UCCJEA encourages national uniformity in child-custody disputes and attempts to address problems endemic to American families' increasing mobility, such as

- competing jurisdictions entering conflicting interstate child-custody orders,

- forum shopping, and

- the drawn out and complex child-custody legal proceedings often encountered by parties where multiple states are involved.

*T.B.*, 497 S.W.3d at 644–45 (citing *In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012) (orig. proceeding)). In the past, state courts often modified custody each time a child moved from one state to another, and those orders often conflicted. *Dean*, 393 S.W.3d at 743.

8

To minimize these conflicts, the UCCJEA provides guidance on how to determine which state has jurisdiction and, at the heart of that determination, makes the child's "home state" the primary factor. *Id.* Most states—including Michigan and Texas—have adopted the Act. *See id.*; *T.B.*, 497 S.W.3d at 645; *see also* Mich. Comp. Laws Ann. §§ 722.1101–.1406 (2020); Tex. Fam. Code Ann. §§ 152.001–.317. A proceeding that is brought to terminate parental rights falls within the UCCJEA's definition of a "child custody proceeding." *See* Tex. Fam. Code Ann. § 152.102(4) ("The term includes a proceeding for . . . termination of parental rights.").

The UCCJEA identifies four kinds of jurisdiction:

- "Initial Child Custody Jurisdiction" (*id.* § 152.201);

- "Exclusive Continuing Jurisdiction" (*id.* § 152.202);

- "Jurisdiction to Modify Determination" (*id.* § 152.203); and

- "Temporary Emergency Jurisdiction" (*id.* § 152.204).[6]

A. **Modifying another state's custody determination**

A child-custody determination is a "modification" under the UCCJEA when it "changes, replaces, supersedes, or is otherwise made after a previous determination

---

[6]In an emergency situation, the UCCJEA gives states broad powers to act first and sort out jurisdictional issues later. *Id.* Neither Father nor Mother challenges the trial court's authority to have entered emergency orders under Section 152.204, nor do they raise an appellate issue complaining about any failure to follow the steps laid out in Sections 152.204(c) and (d) for communicating and coordinating with the Michigan court at the outset of this case. In any event, the record does not indicate that the trial court knew of the Michigan orders until the morning of trial in August 2019.

concerning the same child, whether or not it is made by the court that made the previous determination." *See id.* § 152.102(12). Because it is undisputed that a Michigan court had entered earlier custody orders involving John and Ann, we look to Section 152.203 to evaluate whether the Texas trial court had jurisdiction to do something different:

> Except as otherwise provided in Section 152.204 [dealing with emergency jurisdiction], a court of this state [Texas] may not modify a child custody determination made by a court of another state [Michigan] unless a court of this state [Texas] has jurisdiction to make an initial determination under Section 152.201(a)(1) or (2) and:
>
> > (1) the court of the other state [Michigan] determines it no longer has exclusive continuing jurisdiction under Section 152.202 or that a court of this state [Texas] would be a more convenient forum under Section 152.207; or
> >
> > (2) a court of this state [Texas] or a court of the other state [Michigan] determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state [Michigan].

*Id.* § 152.203 (altering wording to apply statute to facts of this case).

Because at the time of trial, Father still resided in Michigan, Section 152.203(2) did not apply. Thus, for the trial court here to have had modification jurisdiction, two things must have been true:

- a Texas court could have made an initial custody determination, and

- the Michigan court determined that it would no longer exercise exclusive, continuing jurisdiction or that Texas was the more convenient forum.

We examine each factor in turn.

10

### 1.    Initial child-custody jurisdiction

As Section 152.203 provides, initial child-custody jurisdiction is a prerequisite to modification jurisdiction, and in that regard it is not an end in itself but is rather a conduit to an end. "Section 152.201(a) is a procedural mechanism for determining jurisdiction." *Dean*, 393 S.W.3d at 749. Under Section 152.201(a), a court may exercise initial child-custody jurisdiction in one of four disjunctive scenarios, only the first of which we need consider because it applies here:

> (a) Except as otherwise provided in Section 152.204 [emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:
>
>> (1) this state is the home state of the child on the date of the commencement of the proceeding . . . .

Tex. Fam. Code Ann. § 152.201(a)(1); *see* Mich. Comp. Laws § 722.1201.

In other words, assuming no previous custody proceeding in another state, could a Texas court have been the first to decide a custody issue?[7] The first-listed way to answer that question "yes" is where Texas is a child's current home state. Although the UCCJEA has several branching paths when it comes to deciding whether modification jurisdiction exists, our road forward is made simpler here because at the time the Department filed this case, no one disputes that Texas was John's and Ann's "home state," which the UCCJEA defines as

---

[7]The Family Code defines an "initial determination" as "the first child custody determination concerning a particular child." *See* Tex. Fam. Code Ann. § 152.102(8).

11

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . .

Tex. Fam. Code Ann. § 152.102(7).[8]

The first prerequisite for the trial court here to have exercised modification jurisdiction is thus satisfied.

## 2. The issuing court's waiving its jurisdiction

Under the UCCJEA, once an initial custody determination is made, the issuing court—the Michigan court under these facts—retains "exclusive continuing jurisdiction" over all further custody orders and proceedings. *See* Tex. Fam. Code Ann. § 152.202; *see also* Mich. Comp. Laws § 722.1202.

The UCCJEA gives that court the sole power to decide whether it will *continue* to exercise that jurisdiction. *See In re Tieri*, 283 S.W.3d 889, 896 (Tex. App.—Tyler 2008) (orig. proceeding) (stating that when New Jersey had made initial custody determination, "[o]nly a New Jersey court [could] determine that New Jersey ha[d] lost exclusive, continuing jurisdiction based on" the child's, or the child's and one parent's, lack of significant connection with the state and based on the fact that substantial evidence was no longer available in New Jersey "concerning the child's care, protection, training, and personal relationships"); *Saavedra v. Schmidt*, 96 S.W.3d

---

[8]A child's home state can change as a family moves. Here, Michigan was the children's home state when the Michigan court entered custody orders in 2009 and 2012, but the children had been living with Mother in Texas for more than six consecutive months when the Department filed its petition.

533, 541, 542 (Tex. App.—Austin 2002, no pet.) (noting that the "California court retain[ed] exclusive continuing jurisdiction and [was] the only state that [could] determine if it [would] continue to exercise that jurisdiction"; even if Texas was the more appropriate forum, "the California court must make this determination before a court of this state may modify the California court's child custody determinations").

Because only Michigan may continue to exercise or decline to exercise its own jurisdiction, we look to the Michigan UCCJEA exclusive-jurisdiction provision:

722.1202 Exclusive, continuing jurisdiction

Sec. 202. (1) Except as otherwise provided in section 204, a court of this state that has made a child-custody determination consistent with section 201 or 203 has exclusive, continuing jurisdiction over the child-custody determination until either of the following occurs:

(a) A court of this state determines that neither the child, nor the child and 1 parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.

(b) A court of this state or a court of another state determines that neither the child, nor a parent of the child, nor a person acting as the child's parent presently resides in this state.

(2) A court of this state that has exclusive, continuing jurisdiction under this section may decline to exercise its jurisdiction if the court determines that it is an inconvenient forum under section 207.

(3) A court of this state that has made a child-custody determination and that does not have exclusive, continuing jurisdiction under this section may modify that child-custody determination only if it has jurisdiction to make an initial child-custody determination under section 201.

13

Mich. Comp. Laws § 722.1202 (footnotes omitted).[9]

The question for our Texas trial court was whether the Michigan trial court effectively concluded that "neither the child, nor the child and 1 parent, nor the child and a person acting as a parent, have a significant connection with [Michigan] and that substantial evidence is no longer available in [Michigan] concerning the child's care, protection, training, and personal relationships." *See* Mich. Comp. Laws § 722.1202(1)(a); *cf.* Tex. Fam. Code Ann. § 152.202(a)(1).[10]

This was a question that only the Michigan court was empowered to answer, and the UCCJEA does not prescribe any particular form or verbiage by which a court with exclusive, continuing jurisdiction demurs to a state, like Texas, that has acquired initial-determination jurisdiction by being a child's home state and that could therefore be given modification jurisdiction. We have before us only the Texas court's

[9]This section of the UCCJEA as adopted in Texas differs slightly. Texas's version has no counterpart to Section 722.1202(2), which in Michigan refers expressly to Section 207 of the UCCJEA dealing with declining jurisdiction on the basis of the issuing state's being an inconvenient forum. *Compare* Tex. Fam. Code Ann. §§ 152.202, .207, *with* Mich. Comp. Laws §§ 722.1202, .1207. The inconvenient-forum concept is present in both states' UCCJEA section on modification jurisdiction. *See* Tex. Fam. Code Ann. § 152.203(1); *see also* Mich. Comp. Laws § 722.1203(a).

[10]Another question could have been whether the Michigan court determined that it should "decline to exercise jurisdiction" because Michigan was an "inconvenient forum" under UCCJEA Section 207, but from the Texas judge's statements in the record about his discussion with his Michigan counterpart—for example, "It appears that in this discussion, this mother and the child ha[ve] contacts in Texas now without any significant contacts in Michigan, and so Judge Pittman is willing to waive jurisdiction"—the Michigan court made its decision based on Section 202(1)(a) rather than 202(2)/207.

characterization of its communications with the Michigan court and the Michigan court's e-mail, as it was dictated into the record:

> [P]ursuant to consultation with [the Tarrant County juvenile-district-court judge], this Court is satisfied that the best interest of the minor children and their mother, who have resided in Tarrant County since 2017, in the interest of justice are best served by this Court hereby declining the retention of jurisdiction over these parties and the now dormant proceedings in Case 08-241303-DP, regards the Honorable Gregory C. Pittman, Presiding Judge, 14th Circuit Court-Family . . . Division Muskegon County, Michigan.

Courts are to interpret the UCCJEA according to its purposes, which are to promote cooperation with the courts of other states so that the state best positioned to decide custody issues does so and to promote consistent and speedy resolution of child-custody issues involving multiple states. *T.B.*, 497 S.W.3d at 651. Although we do not necessarily endorse the manner in which the two courts communicated, requiring a formal order or the e-mail itself when the parties do not dispute what the e-mail contained would defeat the UCCJEA's purposes in these circumstances. *Cf.*, *e.g.*, *Rainbow v. Ransom*, 990 A.2d 535, 536 (Me. 2010) (concluding that Maine properly exercised jurisdiction to modify Hawaii custody determination when Hawaii court had informed Maine court during telephone conference that it was declining jurisdiction); *Zirkle v. Franklin*, No. 282826, 2008 WL 4228282, at *1 (Mich. Ct. App. Sept. 16, 2008) (not designated for publication) (holding that letter from court of state in which child resided implied that it had acquiesced to Michigan court's exercising UCCJEA

jurisdiction). The record here sufficiently shows that the Michigan court waived its exclusive, continuing jurisdiction, as was its right.

Put differently, despite not using the statutory language in its e-mail, the Michigan court's missive effectively determined that the children and Mother no longer had a significant connection to Michigan and that Michigan no longer had substantial evidence available concerning the children's care, protection, training, and personal relationships. *See* Mich. Comp. Laws § 722.1202(1)(a); Tex. Fam. Code Ann. § 152.202(a)(1).[11]

The Michigan court could and did decline to exercise its exclusive, continuing jurisdiction under the UCCJEA. *See* Mich. Comp. Laws § 722.1202(1)(a); Tex. Fam. Code Ann. § 152.202(a)(1). As a result, the Texas court could and did acquire modification jurisdiction under Section 152.203.

## B. Father's and Mother's procedural complaints

Although not framed as a separate issue on appeal, as part of their jurisdictional attack Father and Mother also complain about the procedures by which the Texas trial court and the Michigan court communicated and resolved the jurisdictional issue before them, arguing a failure to comply with Section 152.110. *See* Tex. Fam. Code

---

[11]Although irrelevant to the purely jurisdictional issue before us, the record seems to support that determination. Father had remained in Michigan when Mother and the children moved to Texas in November 2016, Father was currently incarcerated in Michigan, and all the facts pertinent to the termination proceeding—the Department's involvement, the children's removal, and all that followed—had occurred in Texas.

16

Ann. § 152.110. That Section of the UCCJEA addresses how courts may exchange information:

> (a) In this section, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.
>
> (b) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.
>
> (c) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
>
> (d) If proceedings involving the same parties are pending simultaneously in a court of this state and a court of another state, the court of this state shall inform the other court of the simultaneous proceedings. The court of this state shall request that the other court hold the proceeding in that court in abeyance until the court in this state conducts a hearing to determine whether the court has jurisdiction over the proceeding.
>
> (e) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.
>
> (f) Except as otherwise provided in Subsection (e), a record must be made of any communication under this section. The parties must be informed promptly of the communication and granted access to the record.

*Id.* § 152.110.

Father complains that the trial court failed to comply with subsections (c) and (f) by not allowing appellants' counsel to be on the phone call with the Michigan court to "present facts and legal arguments before a decision on jurisdiction [was] made," *id.*

§ 152.110(c), and by not ensuring that the Michigan court's e-mail was put into the record, *id.*, § 152.110(f). Mother's complaint on appeal is that

> [t]he phone call on the day of final trial between courts and the referenced e[-]mail[,] which is not a part of the record[,] falls woefully short of meeting the requirements of Chapter 152, Chapter 155[,] or Chapter 262.203. None of the parties were given the opportunity to present facts and legal arguments before a decision on jurisdiction was made; a motion to transfer was never submitted nor was there ever an order to transfer.

Section 152.110 is a procedural rather than a jurisdictional statute. *See J.W. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00260-CV, 2019 WL 3922795, at *4 (Tex. App.—Austin Aug. 20, 2019, pet. denied) (mem. op.); *see also In re Cristian I.*, 224 Cal. App. 4th 1088, 1099 (Cal. Ct. App. 2014).

*J.W.* involved a complaint much like Father's and Mother's. There, in addition to claiming noncompliance with two aspects of Section 152.204, the appellant father argued violations of Section 152.110(c) and (f): the trial court failed to give the parties an opportunity to present facts and arguments before a final jurisdictional decision was made, as Subsection (c) called for, or to "make a record of the telephonic hearing between the Nevada and Texas courts and grant the parties access to the record of that hearing," as the father claimed Subsection (f) required. *J.W.*, 2019 WL 3922795, at *3. The appellant asserted that these violations "prevented the trial court from obtaining subject-matter jurisdiction and violated the father's due-process rights." *Id.* The Austin court disagreed: "The father cites to no cases holding that a violation of [Section 152.204's and Section 152.110's] procedural requirements prevents the trial

18

court from acquiring subject-matter jurisdiction, and we have found none." *Id.* at \*4 & n.3 (compiling cases holding that "the failure to comply with similar procedural requirements in the Texas Family Code does not deprive the trial court of subject-matter jurisdiction"). The *J.W.* court also noted that apart from the jurisdictional issue, the trial court had in any event substantially complied with Section 152.110 by, among other things, conferring with the Nevada court; providing notice to the parties of its telephonic hearing with the Nevada court; and holding a hearing on the mother's plea to the jurisdiction at which the parties argued the jurisdictional issues. *Id.* at \*4.

Substantial compliance was similarly found by the California appellate court in *Cristian I.*, which *J.W.* cited. In *Cristian I.*, Arizona had entered an earlier custody order; the mother later took the child to California while the father remained in Arizona. *Cristian I.*, 224 Cal. App. 4th at 1092. California's child-protection department subsequently removed the child due to abuse by the stepfather, proceedings that the father brought to the Arizona court's attention. *Id.* at 1093–95. Arizona then voluntarily ceded jurisdiction to California apparently without communicating with the California court. *Id.* at 1095. The mother appealed the California court's ultimate placement of the child with his father in Arizona. *Id.* at 1096.

One of the mother's appellate arguments was that the California court lacked subject-matter jurisdiction because it had "failed to follow the required [UCCJEA] procedures to maintain its jurisdiction after the initial [emergency] detention order,"

*id.* at 1099, including the procedures set forth in Section 3410 of the California Family Code (California's UCCJEA equivalent of Texas Family Code Section 152.110), *id.* at 1097–98. *See* Cal. Fam. Code § 3410 (2020). Agreeing that the proceedings were "flawed," the appellate court nonetheless held that they had "substantially complied with the essential procedural requirements of the UCCJEA and [had] fully satisfied the central goals of the act." *Cristian I.*, 224 Cal. App. 4th at 1099. After discussing the procedural flaws, the court held them to have been harmless: "It is not reasonably probable the delay and indirect method of communication had any impact on the outcome of the case." *Id.* at 1101.

So too here. Assuming that the trial court had remedied all that Father and Mother had pointed to as procedural deficiencies, we do not see it as "reasonably probable" that Michigan would have retained its exclusive, continuing jurisdiction. In any event, although we reiterate that it is not jurisdictional, we conclude that the trial court substantially complied with Section 152.110. *See J.W.*, 2019 WL 3922795, at *4; *see also Saavedra*, 96 S.W.3d at 538 n.7 (citing Section 152.110(f) in noting that the record "include[d] a memorandum prepared by Judge Meurer, the Texas judge, recording the details of her conversation with [California] Commissioner Appel").

### The interplay—or not—between Texas Family Code Chapter 152 and Chapter 155

Finally, we clarify that the parties' references to a "transfer" under Chapter 155 would properly apply only to intrastate proceedings. As noted, part of Mother's

argument is that "a motion to transfer [to Michigan] was never submitted nor was there ever an order to transfer."[12] The Department had, it is true, pleaded that "[c]ontinuing jurisdiction over the children has been established in another Court, and a timely transfer will be sought." But that language seems to be used only in a situation where two Texas courts are involved. *See, e.g., In re L.S.*, 557 S.W.3d 736, 738 (Tex. App.—Texarkana 2018, no pet.) (quoting Department's petition using exact sentence and holding final termination order void where Texas county exercising Chapter 262 emergency jurisdiction proceeded to final order without transferring case to other Texas county that had exclusive, continuing jurisdiction); *In re Hamilton*, No. 12-13-00080-CV, 2013 WL 2456499, at *2 (Tex. App.—Tyler June 5, 2013, orig. proceeding) (mem. op) (noting that "in cases involving motions for intrastate transfers, the Texas Family Code specifies a scheme providing for due process. *See* Tex. Fam. Code Ann. § 155.204"); *In re C.C.B.*, No. 08-01-00353-CV, 2002 WL 31727247, at *2 (Tex. App.—El Paso Dec. 5, 2002, no pet.) (not designated for publication) (noting that order of "transfer" to Colorado was "really a ceding of jurisdiction under Tex. Fam. Code Ann. § 152.202" because a transfer under the Family Code "is an intrastate action in which a Texas trial court with proper jurisdiction sends the case to another Texas court"), *disapproved on other grounds by In re*

[12]Mother's fact statement on appeal is similar: "The record evidence does not indicate the Petitioner, the Court[,] or any party to the lawsuit filed a Motion to Transfer jurisdiction from Michigan. . . . The record evidence does not indicate that a Transfer Order was entered in this case."

*Forlenza*, 140 S.W.3d 373, 378 (Tex. 2004) (orig. proceeding); *see also* Texas Practice Guide for Child Protective Services Attorneys § 5: Litigation Essentials 5–7 (2016), https://www.dfps.state.tx.us/Child_Protection/Attorneys_Guide/documents/Section_5_Litigation_Essentials.pdf (last visited Mar. 24, 2020).

The Department-prepared Practice Guide makes clear that the interrelationship between Chapters 155 and 262 applies solely to transfers from one court to another within Texas:

> If there is a prior child custody order from a Texas court when DFPS files suit, the issue is which Texas court has jurisdiction. To find out whether another court has continuing, exclusive jurisdiction (CCEJ), after the adversary hearing DFPS must request that the vital statistics unit (VSU) identify *any Texas court* that has continuing exclusive jurisdiction . . . .

> If the VSU search reveals that a court of continuing, exclusive jurisdiction exists, the issue of which court adjudicates the case is determined by Texas Family Code transfer provisions . . . . While the general rule is that a motion for transfer by the petitioner should be filed with the initial pleadings, a motion for transfer can be filed at any time during the pendency of a DFPS case under Chapter 262.

*Id.* at 5 (emphasis added) (footnotes omitted) (citing Tex. Fam. Code Ann. §§ 155.101(a), 155.201, 155.202, 262.202).

Indeed, the record in this case contains the Texas vital-statistics department's May 10, 2018 confirmations that no Texas court had entered a previous judgment regarding John or Ann: "Pursuant to [S]ection 155, Texas Family Code, you are advised that according to the Central Record File, the above individual has not been

the subject of a suit affecting the parent–child relationship in which a judgment was entered on or after January 1, 1974."

Both Father and Mother interpret the Department's reference to another court's having continuing jurisdiction and to which "a timely transfer will be sought" as meaning the Michigan court. Father argues that there is "no question that the State recognized that the Michigan court had continuing jurisdiction over the children as of May 2nd, 2018 [when the Department filed its amended petition] and was on notice that a transfer of jurisdiction would be necessary." We find it just as likely that the petition's "timely transfer" sentence appeared in error, particularly in light of the petition's supporting affidavits stating that the Department "does not have information of any proceeding concerning the child pending in a court of this or any other state."

To the extent Father and Mother also suggest that after the full-adversary hearing,[13] the Texas trial court should have identified the Michigan court as the court of exclusive, continuing jurisdiction and transferred the case to Michigan, the provisions of Chapter 262 do not support that idea. *See* Tex. Fam. Code Ann. §§ 262.202–.203.

---

[13] *See* Tex. Fam. Code Ann. § 262.201. The "full-adversary hearing" is sometimes referred to as the "fourteen-day hearing" because it is supposed to occur no later than the fourteenth day after the Department has taken custody of a child. *Id.*; *see In re Allen*, 359 S.W.3d 284, 289 (Tex. App.—Texarkana 2012, orig. proceeding) (op. on reh'g); *In re E.D.L.*, 105 S.W.3d 679, 686 (Tex. App.—Fort Worth 2003, pet. denied).

Section 262.202 provides, "If at the conclusion of the full adversary hearing the court renders a temporary order, the governmental entity shall request identification of a court of continuing, exclusive jurisdiction as provided by Chapter 155."[14] *Id.* § 262.202. And Section 262.203(a) addresses transferring suits, something governed by the "procedures provided by Chapter 155." *Id.* § 262.203(a). Thus, both provisions direct us to Chapter 155 and its intrastate applications, making them inapplicable to Father's and Mother's UCCJEA jurisdictional argument.

In any event, the UCCJEA expressly controls over any other provisions within Title 5 of the Family Code ("The Parent–Child Relationship and the Suit Affecting the Parent–Child Relationship"), within which Chapters 152, 155, and 262 appear. *See id.* § 152.002 ("If a provision of this chapter conflicts with a provision of this title or another statute or rule of this state and the conflict cannot be reconciled, this chapter prevails.").

We overrule Father's and Mother's issue challenging the termination order as being void for lack of subject-matter jurisdiction.

### Conclusion

Having overruled Father's and Mother's contentions, we hold that the trial court properly asserted modification jurisdiction and affirm the trial court's judgment.

---

[14]We know from the vital-statistics-department communications that the Department had done just that, turning up nothing because only Texas records are examined.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  March 26, 2020